**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RIGOBERTO CHAIDEZ,<br><br>*Petitioner,*<br><br>v.<br><br>ALBERTO R. GONZALES, Attorney General,<br><br>*Respondent.* | No. 02-71966<br><br>Agency No.<br>A72-141-214<br><br>ORDER<br>AMENDING<br>OPINION AND<br>AMENDED<br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
September 14, 2006—San Francisco, California

Filed February 14, 2007
Amended May 17, 2007

Before: Betty B. Fletcher and Marsha S. Berzon,
Circuit Judges, and David G. Trager,* District Judge.

Opinion by Judge Berzon

---

*The Honorable David G. Trager, Senior United States District Judge
for the Eastern District of New York, sitting by designation.

## COUNSEL

Derek F. Foran (argued), Andrew Sabey, Claudia Vetési, and Brian Orion, Morrison & Foerster LLP, Walnut Creek, California, for the petitioner.

Anh-Thu P. Mai (argued) and Stephen J. Flynn, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## ORDER

The opinion filed on February 14, 2007 and reported at 476 F.3d 773 is hereby amended as follows:

1) On 476 F.3d at 780, the last two sentences of the paragraph beginning "We conclude that . . ." are replaced with: "Accordingly, the IJ erred in determining that Chaidez is ineligible for suspension of deportation on account of insufficient continuous physical presence. We therefore grant the petition for review and remand for further proceedings."

2) On 476 F.3d at 780, part III is deleted and the final line is amended to read:

"**PETITION FOR REVIEW GRANTED; REMANDED.**"

With these amendments, the petition for panel rehearing is denied. No further petitions for rehearing may be filed.

## OPINION

BERZON, Circuit Judge:

Petitioner Rigoberto Chaidez entered the United States from Mexico in 1988. We are asked to decide whether

Chaidez was properly served with an Order to Show Cause ("OSC") in 1994. In a precedential decision applying the statute in effect in 1994, the Board of Immigration Appeals ("BIA") held that proper service of an OSC occurred when written notice was sent by certified mail to the alien and the certified mail receipt was signed by the alien, counsel of record, or "a responsible person at [the alien's] address." *Matter of Grijalva*, 21 I. & N. Dec. 27, 32 (BIA 1995) (en banc). Chaidez's sworn declaration states that he does not know the person who signed his OSC's certified mail return receipt and that this person was not authorized to sign on his behalf. In light of this uncontradicted evidence, the government has not satisfied *Grijalva*'s "responsible person at the alien's address" requirement.

# I

On January 18, 1994, the former Immigration and Naturalization Service ("INS")[1] issued an OSC for Chaidez. The OSC was sent by certified mail addressed to Chaidez at the San Jose, California address he provided on his asylum and work authorization applications. A return receipt is in the record, signed on a line reserved for "Addressee" rather than that labeled "Agent," with a name resembling Lilia, Libia, or Lebia Nevarez. On March 8, 1994, the Immigration Court sent a hearing notice by certified mail to Chaidez's address, and again a return receipt came back with a signature that appears to be the same person's.

On May 11, 1994, Chaidez failed to appear for his scheduled hearing and an Immigration Judge ("IJ") administratively closed the proceedings.[2] In 2000, the INS requested that

---

[1]On March 1, 2003, the INS ceased to exist and its functions were transferred to the newly created Department of Homeland Security. *See Aguilera-Ruiz v. Ashcroft*, 348 F.3d 835, 835 n.* (9th Cir. 2003).

[2]Chaidez contends that the IJ's decision to close the proceedings evidences a determination that service was improper, as the statute in effect

Chaidez's case be reopened. The IJ who held the initial hearing regarding this request was inclined to agree with Chaidez's position that service of his OSC in 1994 was inadequate and that the INS would therefore have to begin proceedings anew. The IJ told the government, with reference to the BIA's decision in *Matter of Huete*, 20 I. & N. Dec. 250 (BIA 1991), which was adopted in relevant part by *Grijalva*: "You'll have no evidence to the contrary, so I would have . . . to find in favor of the respondent. All he needs to do is submit a declaration, I don't know who this woman is, I never received the notice." The IJ suggested that Chaidez file a motion to terminate proceedings and indicated that such a motion would be granted if accompanied by a declaration of the kind described.

Chaidez followed the IJ's directions. He filed a motion to terminate, contending that the OSC was improperly served and that he never received it, citing *Grijalva*. He also submitted a sworn declaration, stating: "I do not know who the person is who signed on the postal record Form 3811.[**3**] It may

at the time *required* an IJ to enter an in absentia deportation order "if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was . . . provided and that the alien is deportable." 8 U.S.C. § 1252b(c)(1) (1994); *see also Fuentes-Argueta v. INS*, 101 F.3d 867, 870 (2d Cir. 1996) (per curiam) ("In 1990 . . . Congress amended the Act to add § 242B, a more stringent provision *requiring* (rather than merely permitting) the IJ to issue *in absentia* orders of deportation where the INS establishes deportability by 'clear, unequivocal, and convincing evidence.' "); *Matter of Gutierrez-Lopez*, 21 I. & N. Dec. 479, 480 (BIA 1996) (en banc) ("The administrative closing of a case does not result in a final [deportation] order." (internal quotation marks and citation omitted)). In light of our disposition of the "responsible person" issue, we need not address Chaidez's contention regarding administrative closure.

**3**This United States Postal Service form is a certified mail "Domestic Return Receipt." Shortly after Chaidez's OSC was delivered, the Postal Service proposed amendments to its certified mail receipt requirements to ensure that an individual's name was printed on the receipt along with his or her signature. *See* Revisions to Standards Related to Deposit and Deliv-

be Lebia Nevarez. I do not know who Lebia Nevarez is. She does not have authorization to receive service for me. I do not believe she lived at [Chaidez's relevant address] when I did." There is no indication in the record whether the address concerned is a single-occupancy home or a multi-dwelling building.

A new IJ was assigned to the case and continued the matter so he could review *Grijalva*. Chaidez was not questioned at the ensuing hearing about the details of his declaration. In his subsequent decision, the IJ concluded only that "the Order to Show Cause was served on the respondent at his last known address and . . . accordingly, the principles of [*Grijalva*] apply to the respondent's proceedings. Accordingly, the Court finds that service occurred in January 1994." The BIA affirmed the results of the IJ's decision without opinion, pursuant to its streamlining regulation. *See* 8 C.F.R. § 3.1(a)(7) (2002).

Chaidez has two minor children who are United States citizens. As a result of the IJ's decision, Chaidez could not proceed with his application for relief, premised on hardship to

---

ery of Mail, 59 Fed. Reg. 13,287, 13,287-88 (proposed Mar. 21, 1994) (stating that new rules would require "the person signing for an item to print as well as sign his or her name. This proposed change will apply to . . . mail receiving . . . certified . . . service, and is intended to improve the usefulness of the record of delivery that demonstrates that the mail was delivered and the service rendered. Whether on a Postal Service delivery record or on a receipt returned to the sender, an illegible signature may compromise the value of the service for which the sender paid; the proposed new standard is designed to avoid that potential problem. Because most persons can provide a printed name that is more legible than their handwritten signature, the Postal Service believes the former will be valuable to the sender in those instances when it becomes necessary to identify the person who received an accountable mailpiece."); *see also* Revisions to Standards Related to Deposit and Delivery of Mail, 59 Fed. Reg. 32,336, 32,337 (June 23, 1994) (hereinafter "Revisions") (adopting the requirement that names be printed on return receipts as a final rule and stating that it would be implemented on October 2, 1994).

his children, due to the stop-time rule, which cut off his continuous physical presence in 1994, six years after he arrived in the United States. *See Ram v. INS*, 243 F.3d 510, 518 (9th Cir. 2001).[4]

## II

We review the IJ's legal determination de novo. *See Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000).

a. *Applicable Statute and Case Law*

The Immigration Act of 1990 amended the Immigration and Nationality Act's notice provisions, with an effective date of June 13, 1992. *See Grijalva*, 21 I. & N. Dec. at 30-32. For an OSC, which may or may not include the scheduled time and place of proceedings, former § 242B(a)(1), 8 U.S.C. § 1252b(a)(1) (1994), provided that:

> In deportation proceedings under section 242, written notice (in this section referred to as an 'order to show cause') shall be given in person to the alien (or, if personal service is not practicable, such notice shall be given by certified mail to the alien or to the alien's counsel of record, if any) . . . .[5]

---

[4]At the time Chaidez's OSC was mailed, seven years of continuous physical presence were required for suspension of deportation. *See* 8 U.S.C. § 1254(a)(1) (1994). The current statute's provisions for cancellation of removal increased the requisite period to ten years. *See* 8 U.S.C. § 1229b(1)(A).

[5]We note that 8 C.F.R. § 103.5a(a)(2)(iv), in 1994 as now, defines "personal service" to include "[m]ailing a copy by certified or registered mail, return receipt requested, addressed to a person at his last known address." *See Matter of Peugnet*, 20 I. & N. Dec. 233, 236-37 (BIA 1991) (adopting this definition of personal service for OSCs). "Personal service" as used in former 8 U.S.C. § 1252b(a)(1) appears, however, to mean only service "in person;" service by certified mail was, under the statute, an alternative to "personal service," not a form of such service. Also, even with respect

If an alien failed to appear for a scheduled deportation hearing, the government was required to establish "by clear, unequivocal, and convincing evidence that the written notice [required under subsection (a)(2)] was so provided." *Id.* § 1252b(c)(1).

**[1]** Addressing these notice provisions, the BIA in *Grijalva* stated that, as it had previously determined in *Huete*,[6] proper service of an OSC occurs when written notice is sent by certified mail to the alien and the certified mail receipt is signed by either the alien or "a responsible person at [the alien's] address." 21 I. & N. Dec. at 32. The origin or meaning of the term "responsible person" was not identified in *Huete*. *Grijalva* stated with respect to the 1992 change in statutory language that "[i]n the absence of new or contrary language, we find that our holding in *Huete* continues to be applicable to the accomplishment of service of the Order to Show Cause by certified mail." *Id. Grijalva* thereby imported the term "re-

_____

to service by certified mail, the statute stated that the OSC must be "*given . . .* to the alien or to the alien's counsel of record," (emphasis added), not simply sent or mailed. Only by implying the word "addressed" before "to the alien" in § 1252b(a)(1) could the BIA conclude, as it did in *Grijalva*, that "responsible persons" other than the subject alien may be served with notice on his or her behalf. For present purposes, however, we assume that the regulation and *Grijalva* were valid applications of the statute, as the OSC service on Chaidez did not comply with the statute even as interpreted in *Grijalva.*

[6]The statute at the time of *Huete* provided that: "[T]he alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held . . . ." 8 U.S.C. § 1252(b) (1988). 8 C.F.R. § 242.1(c) provided at the time that

> Service of the order to show cause may be accomplished either by personal service or by routine service [regular mail]; however, when routine service is used and the respondent does not appear for [the] hearing or acknowledge in writing that he has received the order to show cause, it shall be reserved by personal service.

*See Huete*, 20 I. & N. Dec. at 252.

sponsible person" from *Huete*, once again without explaining the origin or meaning of the term.

**[2]** In *Grijalva*, the BIA went on to decline to extend the "responsible person" delivery requirement for OSCs, the initial charging documents, to subsequently sent hearing notices, holding with respect to the latter that

> certified mail of such notice of deportation proceedings which is sent to the respondent's last known address is sufficient and . . . proof of actual service or receipt of the notice by the respondent is not required. . . . There is no requirement that the certified mail return receipt be signed by the alien or a responsible person at his address to effect service [of a hearing notice].

*Id.* at 33-34. *Grijalva* concluded with respect to hearing notices that a "presumption of effective service may be overcome by the affirmative defense of nondelivery or improper delivery by the Postal Service," *id.* at 37, and provided guidance for aliens seeking to rebut this presumption. *See id.* ("[I]n order to support this affirmative defense, the [alien] must present substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery or that nondelivery was not due to the [alien's] failure to provide an address where he could receive mail."). The BIA noted that the statute's more stringent requirement for service of an initial charging document, as opposed to subsequent hearing notices, was supported by the fact that after being served properly with an OSC "the alien already had notice that he was in deportation proceedings and would be notified of the calendared hearing," *id.* at 34, circumstances that justify placing a lesser burden on the agency

to keep the alien informed about the status of already-initiated proceedings.[7]

The government contends, relying on our decision in *Arrieta v. INS*, 117 F.3d 429 (9th Cir. 1997) (per curiam), that "the presumption of effective service . . . is relevant to this matter in that certified mail receipts can generally only be signed by a responsible party at the designated address." Addressing service of *hearing* notices, *Arrieta* concluded that "*Grijalva* is correct that notice [of hearing] by certified mail sent to an alien's last known address can be sufficient under the Act, even if no one signed for it." *Id.* at 431. In *Arrieta*, the alien's hearing notice, sent by certified mail, was returned "with an indication that delivery was 'attempted.' " *Id.* at 430. Arrieta contended that "although she had changed her residence, she continued to receive mail at the address she had provided. . . . In support, Arrieta proffered her letter and a letter from her brother stating that the certified mail notice was never delivered to the . . . address." *Id.* at 430-31. We held that "[i]f a responsible person refuses to sign for the certified mail or if the alien has changed address without notice, the presumption of proper delivery in *Grijalva* is a reasonable construction of the notice requirement of the statute," *id.* at 431, and remanded the matter for the agency to determine whether "Arrieta can establish that her mailing address has remained unchanged, that neither she nor a responsible party working or residing at that address refused service, and that

---

[7]The current statute no longer has a requirement that notices to appear, which replaced OSCs, or hearing notices be sent by certified, as opposed to regular, mail. *See* 8 U.S.C. § 1229(a)(1), (a)(2)(A); *see also Matter of M-D-*, 23 I. & N. Dec. 540, 546 (BIA 2002) (explaining that "the use of regular mail [is] a convenience to the [INS], not . . . a mandate to use regular mail instead of certified mail. As in this case, the Service and the Immigration Courts routinely use certified mail instead of regular mail in many instances, although the degree of the use of certified mail varies from region to region."). We held in *Salta v. INS*, 314 F.3d 1076 (9th Cir. 2002), a hearing notice case, that *Grijalva*'s "strong presumption" of hearing notice delivery had to be modified accordingly. *Id.* at 1079.

there was nondelivery or improper delivery by the Postal Service," *id.* at 432.

**[3]** *Arrieta*, however, dealt with service of a hearing notice, not with service of an OSC. We have not held that a presumption of effective service arises for an OSC, as opposed to a hearing notice, sent by certified mail. The Second Circuit explained the significance of this distinction in *Fuentes-Argueta v. INS*, 101 F.3d 867 (2d Cir. 1996) (per curiam):

> [T]he BIA has held that orders to show cause under § 242B are considered to be served only upon proof of actual receipt by the alien . . . . [T]he BIA in *Grijalva* necessarily drew a distinction between the requirements for service of notices of deportation proceedings and the requirements for service of orders to show cause. The Board reasoned that, while § 242B employs the same language to describe the general notice requirements for each, orders to show cause and notices of deportation proceedings are not treated identically elsewhere in § 242B. In particular, § 242B(c)(1) — applicable to notices of deportation proceedings but not to orders to show cause — provides that "[t]he written notice by the Attorney General shall be considered sufficient for purposes of this paragraph if provided at the most recent address provided" by the alien. 8 U.S.C. § 1252b(c)(1). The BIA interpreted this sentence to mean that there is no requirement that anyone actually sign for a notification sent by certified mail — only that it be sent to the alien's last known address.

*Id.* at 871 (third alteration in original).

**[4]** The government nonetheless advocates a presumption of effective service in the OSC context, taking the position that a presumption should be applied that the Postal Service properly discharged its duties and had the addressee or a

responsible person at the alien's address sign for the delivery. We decline to adopt this rule, which would nullify the statute's and *Grijalva*'s bifurcated approach to OSCs and hearing notices by applying the same presumption of effective service to certified mail delivery of both documents. As explained by *Adeyemo v. Ashcroft*, 383 F.3d 558 (7th Cir. 2004), in which the Seventh Circuit similarly rejected a presumption of effective service for OSCs:

> The government . . . cites *Grijalva* for the propositions that "a bald and unsupported denial of receipt of certified mail notices is not sufficient to support a motion to reopen" and that the presumption of proper delivery can only be rebutted by "substantial and probative evidence . . . showing that there was improper delivery." *See Grijalva*, 21 I. & N. Dec. at 37. But . . . this passage from *Grijalva* concerns only Notices of Hearing, to which the return-receipt requirement does not apply. *See id.* at 34 (when a Notice of Hearing is provided by certified mail, "[t]here is *no requirement* that the return receipt be signed by the alien or a responsible person at his address to effect service") (emphasis added). In contrast, there *is* such a requirement in the context of delivering an Order to Show Cause.

*Id.* at 561-62 (alteration in original). We agree with the Second and Seventh Circuits that *Grijalva* permitted a presumption of effective service only for hearing notices. For OSCs, service was proper only if the INS established that the return receipt was signed by the alien or a responsible person at the alien's address.

**[5]** In this case, it is undisputed that Chaidez did not sign for — or receive — the OSC. In the context of the presumption "that postal officers properly discharge their duties," *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002), the issue

therefore becomes whether Nevarez was a "responsible person" at Chaidez's address.

As mentioned above, the term "responsible person" is not defined in the BIA's case law. Nor has the United States Postal Service's Domestic Mail Manual ("DMM") used the term in the context of certified mail delivery or defined it. Generally, the Postal Service's delivery rules mandate that "[i]f a signed receipt is required, mail will be delivered to the addressee (or competent member of his family), to persons who customarily receive his mail or to one authorized in writing to receive the addressee's mail." 39 C.F.R. pt. 3001 subpt. C, app. A § 2023; *see also* Publication of Domestic Mail Classification Schedule, 50 Fed. Reg. 28,144, 28,164 (June 28, 1985) (codifying this language in the Code of Federal Regulations); DMM Issue 46 § D042.2.1 (July 1, 1993) (describing an "addressee's agent" as an employee, "a competent member of the addressee's family, or . . . any person authorized to represent the addressee"). If the sender did not specifically restrict delivery recipients, an option that Chaidez's return receipt makes clear was not selected here, the DMM in effect in January 1994 required delivery "to the addressee or addressee's authorized representative." DMM Issue 46 § S912.3.1.[8]

We need not definitively decide who are responsible persons at an alien's address. Even assuming that *Grijalva*'s "responsible person[s]" and the Postal Service's "addressee's

---

[8]In June 1994, the DMM was revised to allow unrestricted certified mail deliveries at an "apartment house . . . to any person in a position to whom [*sic*] mail for that location is usually delivered." Revisions, 59 Fed. Reg. at 32,337. The current DMM continues to include this delivery option. *See* DMM § 508.1.1.7(d) (*available at* http://pe.usps.com/text/dmm300/508.htm). As this option did not appear for certified mail in the DMM effective at the time Chaidez's OSC was delivered, we do not address whether such persons would be "responsible persons at an alien's address" and, if so, whether due process would be satisfied by leaving certified mail with them. *Cf. Jones v. Flowers*, 126 S. Ct. 1708 (2006).

authorized representative[s]" are coextensive groups, the record must still demonstrate that Nevarez actually was a responsible person at Chaidez's address. Instead, as in the proceedings at issue in *Adeyemo*, "[t]he IJ explicitly relied on the BIA's decision in *Grijalva*, not recognizing that the reasoning of that case [concerning when a return receipt does *not* need to be signed by the addressee or a responsible person at the alien's address] is limited to Notices of Hearing, and does not apply to Orders to Show Cause." 383 F.3d at 560. Thus, while, as in *Adeyemo*, the IJ here "declar[ed] that it did not matter whether the [OSC was] received, so long as there was proof of attempted delivery," *id.*, *Grijalva* in fact requires the government to show that a "responsible person" at Chaidez's address signed the return receipt for his OSC. We therefore turn to evaluating whether the government satisfied this requirement.

b. *Evidentiary Requirements*

The statute clearly placed the evidentiary burden of demonstrating proper OSC service on the government, and by a heightened evidentiary standard. *See* 8 U.S.C. § 1252b(c)(1) (1994) (when an alien fails to appear at a deportation hearing, the government must establish proper notice "by clear, unequivocal, and convincing evidence"). Because *Grijalva* was a case in which OSC service was conceded by the alien, *see* 21 I. & N. Dec. at 35, the BIA provided no guidance regarding evidentiary requirements for OSC service. In *Huete*, "[t]he registered mail return receipt [for the OSC] was returned to the [INS] as unclaimed," 20 I. & N. Dec. at 251, so that decision is also unilluminating with regard to proof of the "responsible person at the alien's address" requirement.

[6] The Seventh Circuit has held that the government can meet its burden of demonstrating OSC notice through receipt by a responsible person at the alien's address only by means of some evidence indicating that a certified mail return receipt signature in fact belongs to a responsible person at the alien's

address. In *Tapia v. Ashcroft*, 351 F.3d 795 (7th Cir. 2003), the court denied a petition for review in which "Tapia conceded before the IJ, and acknowledge[d] in his brief, that the signature could be either his sister's or his cousin's, and while the government offered no further proof that it was his sister's signature, Tapia did not call her to testify that it was not." *Id.* at 798. *Adeyemo*, by contrast, held that the government failed to carry its burden because "[t]he illegible signature on the return receipt . . . is not enough to create a presumption of actual delivery to Adeyemo or a responsible person at his address," 383 F.3d at 562, given that Adeyemo "presented evidence that the signature was neither his nor his ex-wife's and that there was no other responsible person living at his address at the time," *id.* at 561.

**[7]** This case is similar to *Adeyemo*, not to *Tapia*. Here, the government offered no evidence indicating that Nevarez's signature may be that of a responsible person at Chaidez's address. The only indication of Nevarez's status is that she appears to have signed for both the OSC and Chaidez's later hearing notice. Although this consistency supports the proposition that Nevarez was not simply a random passerby, it does not establish that she was a responsible person at Chaidez's address. In his sworn declaration, Chaidez denied knowing Nevarez, adding that he does not believe she resided at his address during the relevant time and that she did not have authorization to receive service for him. *Cf. Celis-Castellano v. Ashcroft*, 298 F.3d 888, 892 (9th Cir. 2002) (recognizing that, in a motion to reopen, the agency "must accept the facts in an alien's affidavit as true unless inherently unbelievable" (citing *Maroufi v. INS*, 772 F.2d 597 (9th Cir. 1985))).

**[8]** We conclude that the government has not met its burden, established in former 8 U.S.C. § 1252b(c)(1) and explicated in *Grijalva*, of demonstrating by clear, unequivocal, and convincing evidence that Chaidez or a responsible person at his address signed the certified mail return receipt for his OSC. Accordingly, the IJ erred in determining that Chaidez is

ineligible for suspension of deportation on account of insufficient continuous physical presence. We therefore grant the petition for review and remand for further proceedings.

**PETITION FOR REVIEW GRANTED; REMANDED.**