**Gerardo AGUILERA–RUIZ,**
**Petitioner–Appellant,**

v.

**John ASHCROFT, United**
**States Attorney General,***
**Respondent–Appellee.**

**No. 02–57212.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 2003.

Filed Nov. 4, 2003.

20. *Olmstead v. United States*, 277 U.S. 438, 479, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

* The petition for review correctly identified the Immigration and Naturalization Service (INS) as the respondent in this transition rule case. Illegal Immigration Reform and Immigrant Responsibility Act § 309(c), Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), as amended. On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice (DOJ) and its functions were transferred to the newly formed Department of Homeland Security. Because this appeal challenges a decision issued by the Executive Office of Immigration Review (encompassing both the Board of Immigration Appeals (BIA) and the immigration courts), which is a component of the DOJ, Attorney General Ashcroft, as the head of the DOJ, is substituted for the INS. *See* 8 U.S.C. § 1252(b)(3) (2000) (respondent is Attorney General where immigration court proceeding commenced after April 1, 1997).

Carlos Vellanoweth and John Wolfgang Gehart, Vellanoweth & Gehart, Los Angeles, CA, for the petitioner-appellant.

Joanne S. Osinoff, Assistant United States Attorney, Los Angeles, CA, for the respondent-appellee.

Before RYMER and TALLMAN, Circuit Judges, and LEIGHTON, District Judge.**

RYMER, Circuit Judge.

Gerardo Aguilera–Ruiz is a native and citizen of Mexico and has been a legal permanent resident of the United States

since 1981. After being ordered deported, and while an appeal was pending before the Board of Immigration Appeals (BIA), Aguilera–Ruiz went to Tijuana, Mexico to buy tequila, candies, and piñatas for a party. The BIA deemed his appeal withdrawn pursuant to 8 C.F.R. § 1003.4, which provides:

> Departure from the United States of a person who is the subject of deportation proceedings subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

Aguilera–Ruiz sought habeas relief in federal district court to reinstate his appeal so that his claim for discretionary relief under former Immigration and Naturalization Act (INA) § 212(c) could be considered. The petition was denied. He now argues that the withdrawal-of-appeal regulation is without statutory basis, conflicts with 8 U.S.C. § 1101(a)(2) and 8 C.F.R. § 1.1(p), and runs counter to Congressional intent to preserve the status of a legal permanent resident who makes a "brief, casual, and innocent" departure. We disagree, and affirm.

I

Aguilera–Ruiz was placed in deportation proceedings by the Immigration and Naturalization Service on August 25, 1995, following his conviction for possession of a controlled substance while armed with a firearm in violation of California Health & Safety Code § 11370.1(a). He was ordered deported on September 29, 1998. He voluntarily left the country on July 28, 2000. This departure executed the order of deportation. By virtue of 8 C.F.R.

** The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

§ 1003.4, Aguilera–Ruiz's departure also constituted a withdrawal of the appeal that he had filed with the BIA.

We have already held for purposes of a sentencing enhancement under U.S.S.G. § 2L2.4(b)(1) that when a person who is under a deportation order, from which he has appealed to the BIA, voluntarily leaves the United States, he has been deported, the deportation is final, and an appeal to the BIA has been withdrawn by virtue of 8 C.F.R. § 1003.4.[1] *United States v. Blaize,* 959 F.2d 850, 852 (9th Cir.1992) (noting that the Fifth Circuit deemed an appeal to the BIA withdrawn in similar circumstances in *Aleman–Fiero v. INS,* 481 F.2d 601, 602 (5th Cir.1973)). It follows that 8 C.F.R. § 1003.4 had the same effect when Aguilera–Ruiz voluntarily left the country for Mexico when he was subject to an order of deportation.

He tries to persuade us otherwise by arguing that his departure was a brief, casual, and innocent trip that was not intended to jeopardize his legal status or withdraw his appeal under *Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). In *Fleuti,* the Supreme Court considered whether a legal permanent resident who had been continuously present in the United States for four years intended a short trip to Ensenada as a departure for purposes of an exception to the "entry" requirements of INA § 101(a)(13). The exception excused an alien who proves that his departure to a foreign place "was not intended or reasonably to be expected by him." *Id.* at 452, 83 S.Ct. 1804. This exception was important to Fleuti because he was excludable at the time of his return from Mexico.

Recognizing that the intent exception was ameliorative, the Court construed it as meaning "an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." *Id.* at 462, 83 S.Ct. 1804. Thus, it held that an "innocent, casual, and brief" departure from the United States indicates that the departure was not intended and so may not subject the resident alien to the consequences of an "entry" into the country upon his return. Fleuti's situation was, however, significantly different from Aguilera–Ruiz's. While both were legal permanent residents with a good deal at stake, the alien in *Fleuti* was not deportable, just excludable. Aguilera–Ruiz was inadmissible *and* removable. Fleuti was not in immigration proceedings when he left the country, whereas Aguilera–Ruiz was subject to an order of deportation. And Fleuti had no pending appeal, so there was no occasion for the Court to consider the effect of 8 C.F.R. § 1003.4.

The two circuits to address this issue agree that *Fleuti* does not undermine § 1003.4. In *Aleman–Fiero v. INS,* 481 F.2d 601 (5th Cir.1973), the Fifth Circuit considered whether an alien who departed from El Paso, Texas, to visit his wife for one day in Juarez, Mexico, should be deemed to have withdrawn his appeal of a deportation order under 8 C.F.R. § 1003.4. The court determined that *Fleuti* did not require the imposition of an "innocent, casual, and brief" exception to § 1003.4 because *Fleuti* concerned an alien who left the country free of any sanctions imposed by immigration laws unlike the petitioner in *Aleman–Fiero* who had left while sub-

---

**1.** *Blaize* was decided, and Aguilera–Ruiz's appeal was deemed withdrawn, before the Department of Justice reorganized Title 8 of the Code of Federal Regulations to reflect the transfer of the functions of the INS to the Department of Homeland Security under the Homeland Security Act of 2002. 68 Fed.Reg. 10350 (March 5, 2003). Thus, *Blaize* and the BIA in the case of Aguilera–Ruiz cited 8 C.F.R. § 3.4, now reorganized without substantive change as § 1003.4.

ject to an order of deportation. The Second Circuit reached the same conclusion in *Mejia–Ruiz v. INS*, 51 F.3d 358, 365(2d Cir.1995), where the alien departed for a 27–day trip to the Dominican Republic while his appeal from an order of deportation was pending before the BIA.

Aguilera–Ruiz also relies on our discussion of "brief, casual, and innocent" departures in *Castrejon–Garcia v. INS*, 60 F.3d 1359, 1362–63 (9th Cir.1995), to illustrate why he would not have thought that his shopping trip to Tijuana would withdraw his appeal and cost him his status as a legal permanent resident. However, *Castrejon–Garcia* involved the continuous physical presence requirement under 8 U.S.C. § 1254 (since repealed) that had an exception for "brief, casual, and innocent" absences from the United States; it has nothing to do with the consequences of departing the country after an order of deportation has been entered. Other cases upon which Aguilera–Ruiz relies are likewise statutory descendents of *Fleuti* and are inapposite for similar reasons. *See, e.g., Espinoza–Gutierrez v. Smith,* 94 F.3d 1270(9th Cir.1996) (interpreting the "brief, casual, and innocent absences" exception to the continuous physical presence requirement of § 1255a(a)(3)(B)); *Jubilado v. United States,* 819 F.2d 210 (9th Cir. 1987) (involving the same situation as *Fleuti*).

Finally, we note that Aguilera–Ruiz's departure was entirely voluntary, unlike the alien in *Di Pasquale v. Karnuth,* 158 F.2d 878 (2d Cir.1947), who boarded a train that briefly crossed and then re-crossed the Canadian border in route from Buffalo, New York, to Detroit, Michigan, or the alien in *Delgadillo v. Carmichael,* 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17 (1947), who was taken to Havana, Cuba when injured on an intercoastal voyage from Los Angeles to New York.

In short, 8 C.F.R. § 1003.4 has no exception for "brief, casual, and innocent" departures. No basis appears for engrafting one onto it, as the regulation constrains only legal permanent residents who voluntarily depart the country under an order of deportation. Neither the *Fleuti* doctrine, nor the rationale for relieving aliens who have continuously resided in the United States but make a brief departure from the country—not occasioned by deportation proceedings—from "entry" requirements applies to an alien who has voluntarily departed the country after being ordered deported.

## II

Aguilera–Ruiz's contention that there is no statutory basis for the withdrawal-of-appeal regulation turns on the same reasoning. He argues that the Attorney General simply created a presumption that a person who departs for any length of time has intended to withdraw his BIA appeal, regardless of the underlying circumstances or the alien's actual intent, and that there is no license to do so in the case of a legal permanent resident. However, the Attorney General (now the Secretary of Homeland Security) has broad authority to administer and enforce the immigration laws. 8 U.S.C. § 1103(a)(1). That authority extends to establishing regulations necessary for administering and enforcing those laws. 8 C.F.R. § 1003.4 deems an appeal withdrawn only when the alien leaves the country having already been ordered deported. Voluntarily leaving the country under an order of deportation amounts to self-deportation because it executes the order. Deeming an appeal withdrawn in these circumstances is not outside the scope of the Attorney General's mandate. *See Aleman–Fiero,* 481 F.2d at 602(noting that the Attorney General has wide discretion

in effectuating the INA and concluding that inference of intent to withdraw appeal is not unreasonable when the departure is voluntary); *cf. Mejia–Ruiz*, 51 F.3d at 363–65 (upholding the validity of 8 C.F.R. § 1003.4 against a challenge that it was promulgated without notice and comment).

Nor does 8 C.F.R. § 1003.4 conflict with other rules under which legal permanent residents retain their status until the completion of immigration proceedings, as Aguilera–Ruiz maintains. He points in particular to 8 U.S.C. § 1101(a)(20), and 8 C.F.R. § 1.1(p). Section 1101(a)(20) defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 C.F.R. § 1.1(p) repeats this definition and adds: "Such status terminates upon entry of a final administrative order of exclusion, deportation, or removal." In Aguilera–Ruiz's view, the effect of these provisions is to preserve legal permanent resident status until there is a final order of deportation which, he submits, was lacking in his case because administrative proceedings were still ongoing when he went to Tijuana.

8 C.F.R. § 1003.4 identifies one way that administrative proceedings are terminated. An appeal may be waived, for example, and waiver would complete the process by rendering the deportation order final. It is not contradictory to impute the same consequence to the voluntary decision of a person such as Aguilera–Ruiz, who is subject to an order of deportation, to leave the country as ordered.

Accordingly, the plain language of the regulation controls. Under 8 C.F.R. § 1003.4, *any* voluntary departure from the United States following entry of an order of deportation will be deemed to withdraw a pending appeal and to render the order of deportation final. This is so regardless of whether the trip is "brief, casual, and innocent" for no such exception exists. Thus, Aguilera–Ruiz was deported and his administrative proceedings were terminated. However infelicitous this may seem, as we observed in *Blaize*, "[a]n alien against whom a deportation order has been issued cannot afford to become an international traveller if he hopes to maintain his status in this country." 959 F.2d at 852.

AFFIRMED.