*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0456p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GHASSAN MANSOUR,

*Petitioner,*

*v.*

No. 05-3674

ALBERTO GONZALES, United States Attorney
General,

*Respondent.*

On Petition for Review from the
Board of Immigration Appeals.
No. A23 194 490.

Submitted: November 1, 2006

Decided and Filed: December 14, 2006

Before: GILMAN and GRIFFIN, Circuit Judges; GWIN, District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:** Mark Jacob Thomas, Chicago, Illinois, for Petitioner. Erica B. Miles, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. In 1995, Ghassan Mansour, a native and citizen
of Iraq, was issued a final order of deportation based upon his aggravated-felony conviction for
conspiracy to possess a controlled substance with the intent to distribute. Mansour had served just
over five years in prison as punishment for this offense. In September of 1997, this court
dismissed—for lack of jurisdiction—Mansour's petition to review his deportation order. The
Immigration and Naturalization Service (INS) denied his motion to reopen the deportation
proceedings in October of 1998.

Despite the deportation order, Mansour remained in the United States until 2000, when he
briefly crossed the border into Mexico. When he attempted to reenter the United States, Mansour

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by
designation.

1

falsely claimed to be a U.S. citizen. Border officials paroled him into the country, where he later pled guilty to one count of making a false claim of U.S. citizenship. In January of 2005, due to changes in the immigration regulations, Mansour filed a special motion with the Board of Immigration Appeals (BIA) to reopen his deportation proceedings. The Department of Homeland Security (DHS) opposed the motion, arguing that Mansour is ineligible to seek the relief he requested.

The BIA denied Mansour's motion. It concluded that because Mansour's trip into Mexico effectively executed the outstanding deportation order, there were no deportation proceedings to reopen. The BIA further concluded that the new immigration regulations afforded Mansour no avenue of relief. Mansour timely petitioned for review by this court. For the reasons set forth below, we **DENY** the petition for review.

## I. BACKGROUND

Mansour lives in Warren, Michigan. He was born in Baghdad in 1969 and entered the United States at Detroit, Michigan as a lawful permanent resident in August of 1981. On July 18, 1988, Mansour pled guilty to one count of conspiracy to possess a mixture containing a controlled substance with the intent to distribute, in violation of Mich. Comp. Laws § 333.7403(2)(a)(i). He was sentenced on August 19, 1988 to serve between five and twenty years in prison. The Michigan state-court judge credited Mansour with 49 days of time served prior to his conviction. Mansour was in prison for five years and a day. He was released on July 1, 1993.

In June of 1990, while Mansour was still incarcerated, the INS commenced deportation proceedings against him by issuing an Order to Show Cause. The INS claimed that Mansour was deportable under INA § 241(a)(11) (now codified as amended at 8 U.S.C. § 1227(a)(2)(B)(i)). Section 241(a)(11) states that any alien convicted of an offense relating to a controlled substance, except for a single offense of marijuana possession under 30 grams, is deportable. Mansour admitted the INS's factual allegations and conceded his deportability, as well as the INS's classification of him as an aggravated felon.

In August of 1991, the INS moved to administratively close the deportation proceedings pending a possible resentencing of Mansour, and the Immigration Judge (IJ) granted the motion. The record does not reveal whether or not Mansour was actually resentenced. By the time deportation proceedings resumed, Mansour had retained new counsel who was not familiar with had happened on the resentencing issue.

The INS filed a motion to recalendar the deportation proceedings. Shortly after Mansour was released from prison in July of 1993, the IJ granted the motion. The IJ subsequently found Mansour deportable as charged. Mansour argued that, although he was deportable, he was eligible for discretionary relief under INA § 212(c). 8 U.S.C. § 1182(c). Section § 212(c), later repealed, provided that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General." 8 U.S.C. § 1182(c) (repealed 1996). An alien "who ha[d] been convicted of one or more aggravated felonies and ha[d] served . . . a term of imprisonment of at least 5 years," however, was ineligible for such discretionary relief. *Id.*

In January of 1995, the IJ ordered Mansour deported to Iraq, finding that he was statutorily ineligible for § 212(c) relief because he had been convicted of an aggravated felony and had served at least five years in prison. The BIA affirmed the IJ's decision. Mansour's petition for review was subsequently dismissed by this court for lack of jurisdiction. *See Mansour v. INS*, 123 F.3d 423, 424 (6th Cir. 1997). Section 440(a)(10) of the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), provides that "[a]ny final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in [the Immigration and Nationality Act] section § 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by [INA] section 241(a)(2)(A)(ii) for which both predicate offenses are covered by [INA] section 241(a)(2)(A)(i), shall not be subject to review by any court." *Id*. at 424 (citation omitted) (brackets in original). Because the INS issued Mansour's final order of deportation as a result of a felony conviction covered by § 440(a) of AEDPA, this court held that it had no jurisdiction to review his deportation order. *See id*. at 426.

In October of 1997, Mansour filed a motion to reopen his deportation proceedings with the BIA in light of the Attorney General's decision in *In re Soriano*, 21 I. & N. Dec. 516 (BIA 1996, A.G. 1997). The Attorney General in *Soriano* directed the BIA to reopen cases where an alien had been placed into deportation proceedings prior to April 24, 1996, the effective date of AEDPA, and had conceded deportability. *Id*. AEDPA § 440(d) repealed INA § 212(c). Under *Soriano*, eligible aliens could reopen their deportation proceedings only "for the limited purpose of permitting him or her to contest deportability." *Soriano*, 21 I. & N. at 540. The purpose was "to eliminate even the remote possibility that an alien who had a colorable defense to deportability may have conceded deportability in reliance on the availability of section 212(c) relief." *Id*. Mansour's motion was denied by the BIA because he was ineligible for § 212(c) relief well before the enactment of § 440(d) of AEDPA due to his felony conviction and time spent in prison. This meant that the 1995 order of deportation remained final. *See* 8 C.F.R.§§ 1003.1(d)(2)(H), (d)(2)(ii), and (d)(7). The INS failed to execute the order of deportation, however, and Mansour remained in the United States.

In June of 2000, Mansour became engaged to Vanessa Ramos, a U.S. citizen from El Paso, Texas. Mansour claims that while he was in El Paso attending his engagement party, he "became drunk and accidentally travelled to Mexico." When he attempted to reenter the United States, Mansour falsely declared that he was a U.S. citizen. Border officials soon discovered that he was not a citizen. Although Mansour was a legally admitted permanent resident when he first came to the United States in 1981, the final order of deportation resulting from his drug conviction rendered Mansour inadmissible. Mansour was then paroled into the United States, where he pled guilty in June of 2001 to one count of making a false claim of U.S. citizenship, in violation of 18 U.S.C. § 911. He received a sentence of six months' home detention and three years' probation.

Mansour claims that he pled guilty only after INS officials offered to release him in exchange for his guilty plea. He returned to Michigan and married Vanessa Ramos in 2001. They now have two young children who are U.S. citizens.

In January of 2005, Mansour filed a special motion to reopen his deportation proceedings pursuant to 8 C.F.R. § 1003.44, which allows eligible aliens who pled guilty or nolo contendere to certain crimes before April 1, 1997 to apply for relief. Mansour argued that under the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), he is now eligible for relief under the "special 212(c) rules." In *St. Cyr*, the Supreme Court held that former INA § 212(c) relief remained available to aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible" for a waiver of inadmissibility "at the time of their plea under the law then in effect." *Id*. at 326. Section 1003.44, then, effectively codified the Court's holding in *St. Cyr*. *See Lawrence v. Gonzales*, 446 F.3d 221, 225 (1st Cir. 2006) ("The regulation, which applies *St. Cyr*, [states] that the alien must have pled guilty 'pursuant to a plea agreement made before April 1, 1997.'").

The DHS, which took over the functions of the INS in 2003, argued that Mansour's motion should be denied pursuant to 8 C.F.R. § 1003.44(k)(2), which excludes from eligibility for special relief "[a]liens issued a final order of deportation or removal who then illegally returned to the United States." In May of 2005, the BIA denied the motion, concluding that there were no deportation proceedings to reopen because Mansour's brief foray into Mexico had effectively

executed the outstanding deportation order. The BIA also found that "the new regulations do not provide [Mansour with] any avenue of relief." This timely appeal followed.

## II. ANALYSIS

### A.      Standard of review

We review the BIA's decision to grant or deny a motion to reopen under the abuse-of-discretion standard. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). Abuse-of-discretion review requires us to decide whether the denial of the motion "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (citation and quotation marks omitted).

In contrast, we review legal issues de novo. *Id.* Substantial deference is given, however, to the BIA's interpretation of the INA and accompanying regulations. *Sad v. INS*, 246 F.3d 811, 814 (6th Cir. 2001). The BIA's interpretation of the statute and regulations will be upheld unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 815.

### B.      The statutory and regulatory framework

Section 101(g) of the INA, 8 U.S.C. § 1101(g), provides as follows:

[A]ny alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed.

The Supreme Court has held that "[d]eportation orders are self-executing orders, not dependent upon judicial enforcement." *Stone v. INS*, 514 U.S. 386, 398 (1995). It is well settled that when an alien departs the United States while under a final order of deportation, he or she executes that order pursuant to the law. *See Mrvica v. Esperdy*, 376 U.S. 560, 563-64 (1964) (declaring that an alien seaman's departure executed the order of deportation when he left the United States "irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed"); *see also In re Palma*, 14 I. & N. Dec. 486, 487 (BIA 1973) (holding that an alien self-executed his deportation order by departing the United States, even though he returned the same day); *In re Wang*, 17 I. & N. Dec. 565, 567 (BIA 1980) (ruling that the alien's departure from the country while under a deportation order "imparted a finality to the deportation proceedings predating his departure and result[ed] in his departure being considered 'in pursuance of law'").

Once an alien departs, thereby executing the order of deportation, he "loses his right to contest the lawfulness of the proceedings." *Wang*, 17 I. &. N at 567. "Departure from the United States of a person who is the subject of deportation proceedings subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken." 8 C.F.R. § 1003.4. In other words, "when a person who is under a deportation order, from which he has appealed to the BIA, voluntarily leaves the United States, he has been deported, the deportation is final, and an appeal to the BIA has been withdrawn" under 8 C.F.R. § 1003.4. *Aguilera-Ruiz v. Ashcroft*, 348 F.3d 835, 837 (9th Cir. 2003) (citation omitted).

"[T]he BIA lacks jurisdiction to consider any motion filed on [an alien's] behalf to reopen his removal proceedings" once deportation is final. *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003). An alien is generally precluded, then, from filing a motion to reopen his or her

deportation proceedings once the alien has left the country.  *See* 8 C.F.R. § 1003.2(d) ("A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States.").  Mansour, however, sought to reopen as an alien eligible for special relief under 8 C.F.R. § 1003.44.  This regulation allows certain eligible aliens to file a special motion to reopen under former § 212(c) of the INA "with respect to convictions obtained by plea agreements reached prior to a verdict at trial prior to April 1, 1997."  8 C.F.R. § 1003.44(a).

But relief is available under this section only to aliens "who formerly were lawful permanent residents, who are subject to an administratively final order of deportation or removal, and who are eligible to apply" for the former § 212(c) discretionary relief.  *Id.*  Section 1003.44(k), however, precludes the following categories of aliens from eligibility to seek relief under § 212(c):

(1)     Aliens who have departed the United States and are currently outside the United States;

(2)     Aliens issued a final order of deportation or removal who then illegally returned to the United States; or

(3)     Aliens who have not been admitted or paroled.

8 C.F.R. § 1003.44(k).  The Department of Justice's comments published with this rule explained that "the decision to preclude aliens under a deportation or removal order from obtaining section 212(c) relief is grounded in Congress's intent to limit its availability to those not under deportation orders."  Section 212(c) Relief for Aliens With Certain Criminal Convictions Before April 1, 1997, 69 Fed. Reg. 57826, 57828 (Sept. 28, 2004).

## C.     Jurisdiction to hear a special motion to reopen deportation proceedings

Mansour does not dispute that he voluntarily, if unwittingly, entered Mexico in June of 2000, nor does he contest that during that period of time he was subject to a final order of deportation. Like the petitioner in *Aguilera-Ruiz*, who left the United States for only a few hours in order to buy party supplies in Tijuana, Mexico, Mansour's departure executed his order of deportation.  *See Aguilera-Ruiz*, 348 F.3d at 837-38.  The BIA therefore did not abuse its discretion in concluding that because the outstanding deportation order had been executed, it was required to deny Mansour's special motion to reopen in light of the fact that "there are no deportation proceedings pending that can *be* reopened." (emphasis added); *see also Palma*, 14 I.&N. at 487.

Mansour attempts to avoid this result by characterizing his sojourn into Mexico as a "casual, innocent, and brief departure from the United States" that does not operate as a bar to seeking relief. This language is taken from the Supreme Court's decision in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963).  Fleuti was a legal permanent resident who had been continuously present in the United States since his arrival, except for one brief trip to Mexico.  *Id.* at 450.  The INS attempted to deport Fleuti because it alleged that he was within a statutorily defined class of excludable aliens at the time he returned from Mexico.  *Id.*  But an alien in Fleuti's situation could qualify for an exception to the entry requirements of INA § 101(a)(13), thereby gaining lawful reentry to the United States, if he could prove that his departure from the United States was not "intended or reasonably to be expected by him."  *Id.* at 452.  The Court held that "an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return."  *Id.* at 462.

Mansour's short trip into Mexico might very well have been "innocent, casual, and brief," and he presumably did not intend for it to be "disruptive of his resident alien status."  His reliance

on *Fleuti*, however, is misplaced. Fleuti was simply an excludable alien, not a deportable one. Mansour, on the other hand, was under a final deportation order. On this point, Mansour's case is indistinguishable from *Aguilera-Ruiz*, where the Ninth Circuit noted the significant difference between *Fleuti* and the case before it:

> Fleuti's situation was, however, significantly different from Aguilera-Ruiz's. While both were legal permanent residents with a good deal at stake, the alien in *Fleuti* was not deportable, just excludable. Aguilera-Ruiz was inadmissible *and* removable. Fleuti was not in immigration proceedings when he left the country, whereas Aguilera-Ruiz was subject to an order of deportation.

*Aguilera-Ruiz*, 348 F.3d at 837.

Mansour implies that there is some sort of exception in a deportation order for unwitting departures from the country, but he cites no caselaw, statute, or regulation in support of this proposition. *Fleuti*, in short, does not apply to this case. Because Mansour concedes that he traveled to Mexico, he effectively executed his outstanding deportation order, thus leaving no deportation proceedings to reopen. *See Navarro-Miranda*, 330 F.3d at 675 ("[T]he execution of a removal order resolved any remaining case or controversy between Navarro and the INS.") The BIA therefore did not abuse its discretion in concluding that it had no jurisdiction to grant Mansour's motion to reopen. *See, e.g., id.* (affirming the decision of the BIA that deportation "deprived the [BIA] of any further jurisdiction over motions brought relating to [Navarro's] removal proceedings").

## D.      Application of 8 C.F.R. § 1003.44(k)(2)

As set forth above, 8 C.F.R. § 1003.44(k) excludes three categories of aliens who would otherwise be eligible to apply for a special motion to reopen deportation proceedings in order to pursue discretionary relief via former INA § 212(c). The DHS, in its answer to Mansour's special § 212(c) motion, argued that Mansour was ineligible for this relief under 8 C.F.R. § 1003.44(k)(2), which excludes from eligibility "[a]liens issued a final order of deportation or removal who then illegally returned to the United States." Mansour claims that this section is inapplicable to him because he did not illegally return to the United States, as is purportedly evidenced by the DHS allowing him back into the country in 2003.

We disagree. Mansour attempts to create an ambiguity by implying that his parole into the United States to stand trial for making a false claim of U.S. citizenship renders his entry legal. Again, however, he cites no caselaw in support of this proposition, and the language of the INA compels a contrary result. INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), vests the Attorney General with the power to temporarily parole aliens into the United States on a case-by-case basis, but also provides that "such parole . . . shall not be regarded as an admission of the alien." Parole of an alien into the country for judicial proceedings, as is the case with Mansour, then, is not a "lawful entry of the alien into the United States." INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A); *see also Simeonov v. Ashcroft*, 371 F.3d 532, 536 (9th Cir. 2004) (holding that an alien paroled into the United States pending completion of exclusion proceedings did not lawfully enter the United States and was therefore ineligible for withholding of deportation).

In this case, Mansour was subject to a final order of deportation. He departed for Mexico, even if for just a short while, and attempted to reenter the United States, at which point he falsely claimed that he was a U.S. citizen. Mansour was not "admitted" into the United States, but was paroled into the country to stand trial. He pled guilty to the charge of making a false claim of citizenship. Section 1003.44(k)(2), which excludes from eligibility for § 212(c) relief those aliens who are under a final order of deportation and who illegally reenter the United States, thus applies

to Mansour.  The BIA therefore correctly concluded that 8 C.F.R. § 1003.44 did not provide Mansour with any new avenue of relief.

## III.  CONCLUSION

For all of the reasons set forth above, we **DENY** the petition for review.