RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0241p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARIA ISABEL MADRIGAL,

        *Petitioner,*

    *v.*

ERIC H. HOLDER, JR., United States Attorney
General,

        *Respondent.*

No. 08-3132

On Petition for Review of a Final Order
of the Board of Immigration Appeals.
No. A73 097 649.

Argued: March 12, 2009

Decided and Filed: July 9, 2009

Before: DAUGHTREY, ROGERS, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Scott E. Bratton, MARGARET WONG & ASSOCIATES CO., LPA,
Cleveland, Ohio, for Petitioner. Patrick J. Glen, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Scott E. Bratton, MARGARET
WONG & ASSOCIATES CO., LPA, Cleveland, Ohio, for Petitioner. Patrick J. Glen,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

    DAUGHTREY, J., delivered the opinion of the court, in which ROGERS and
KETHLEDGE, JJ., joined. KETHLEDGE, J. (pp. 10-11), delivered a separate concurring
opinion.

_____

**OPINION**

_____

    MARTHA CRAIG DAUGHTREY, Circuit Judge. The petitioner, Maria Isabel
Madrigal, seeks review of an order of the Board of Immigration Appeals withdrawing her
appeal from the immigration judge's denial of her motion to reopen removal proceedings.

The Board found that because the petitioner had departed from the United States while she was subject to an order of removal and while her appeal was pending, the appeal was effectively withdrawn pursuant to 8 C.F.R. § 1003.4. Noting that she was removed by the government and not of her own volition, Madrigal claims that the withdrawal order was improperly entered. We agree and conclude that the matter should be remanded to the Board for further proceedings on the merits of the denial of the petitioner's motion to reopen.

### *FACTUAL AND PROCEDURAL BACKGROUND*

The petitioner is a native and citizen of Mexico who last entered the United States without inspection in 1997. Her application for adjustment of status was denied in 2004, and she was subsequently issued a Notice to Appear, charging under 8 U.S.C. § 1182(a)(6)(A)(i) that she was subject to removal as an alien present in the United States without having been admitted or paroled. The petitioner's removal hearing was held in February 2007. However, she did not appear, and the immigration judge issued an order of removal *in absentia,* based on the charges contained in the notice.

After the hearing, the petitioner filed a motion to reopen the proceedings in the immigration court, claiming that she had not received notice of the February 2007 hearing. The immigration judge denied the motion, observing that the notice had been sent to the proper address,[1] that it had not been returned, and that the petitioner lacked supporting evidence of non-receipt.

The petitioner then filed a timely appeal with the Board of Immigration Appeals in April 2007. On August 24, 2007, averring that she had been ordered to depart by September 10, 2007, the petitioner filed a motion to expedite and a motion to stay removal pending disposition of her appeal. Before the Board ruled on either motion, the Department of Homeland Security executed the outstanding removal order, and she was deported to Mexico.

---

[1] It appears from the record, however, that in filling out the notice to appear at the hearing, the clerk failed to check the appropriate box indicating how the notice was being served – whether by mail, certified mail, or in person.

In January 2008, the Board held that the petitioner's appeal of the immigration judge's decision denying her motion to reopen had been automatically withdrawn and, therefore, dismissed the appeal pursuant to 8 C.F.R. § 1003.4. That regulation provides:

> Departure from the United States of a person who is the subject of deportation proceedings subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

The Board's determination that the petitioner's departure from the United States constituted a withdrawal of her appeal made the immigration judge's decision final.

The petitioner then filed a timely petition for review of the Board's decision in this court, where she was met with the government's motion to dismiss for lack of jurisdiction. In its motion, the government argued both that Madrigal is not seeking review of a final order under 8 U.S.C. § 1252(a)(1) and that she has failed to exhaust her administrative remedies.

## *DISCUSSION*

### A. Jurisdiction

As the government correctly notes, our jurisdiction is limited to the review of final orders of removal, although our review is not literally confined to examining such orders. Analyzing a previous version of the Immigration and Nationality Act, we observed that an "order of deportation includes more than just the piece of paper authorizing the government to take custody of the alien and transport him beyond our frontiers." *Perkovic v. INS*, 33 F.3d 615, 618 (6th Cir. 1994). Like many courts that have relied upon an implicit jurisdictional grant of authority under 8 U.S.C. § 1252(a)(1) to review Board orders denying motions to reopen removal proceedings, *see, e.g.*, *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005); *Patel v. United States*, 334 F.3d 1259, 1261 (11th Cir. 2003), we have also asserted jurisdiction over denials of a motion to reopen. *See, e.g.*, *Aoun v. INS*, 342 F.3d 503 (6th Cir. 2003).

Neither the immigration judge's removal order nor a Board decision on the petitioner's motion to reopen is presently before the court.**2** Instead, the sole decision at issue is the Board's order automatically withdrawing the petitioner's administrative appeal due to her departure from the United States. The government concedes that we retain the authority to review the Board's denial of a motion to reopen but contends that the withdrawal order was not such an order, because it did not deny the petitioner's motion on the merits. However, by cutting off the petitioner's opportunity for a substantive appellate determination, the withdrawal order gave final effect to the immigration judge's order denying the petitioner's request to reopen her case. Hence, even though the order before us is not technically a denial of the petitioner's motion to reopen, it is the logical and functional equivalent of such an order. Accordingly, we treat the Board's withdrawal order no differently than if it were a denial of a motion to reopen.

In this context, we find unpersuasive the argument that an order issued on procedural grounds is so distinctive from a decision on the merits as to deprive this court of jurisdiction. In our view, the government argues for a distinction without a difference. Although the Board's withdrawal order was indeed a procedural ruling relating to the petitioner's standing to appeal and had no effect on the substance of the petitioner's appeal, it nevertheless rendered the petitioner removable as a matter of law. As we have previously observed, "it would seem very odd indeed for a court to lack the ability to review a procedural decision that is determinative of the merits of a case, particularly when the court has jurisdiction to review the merits of that case absent a conclusive procedural ruling." *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). In a case such as this, in which we would undoubtedly have jurisdiction over the Board's substantive denial of a motion to reopen, it would "seem very odd indeed" that this procedural order issued by the Board could so easily evade judicial review. Accordingly, this particular order is reviewable under section 1252.

---

**2**The petitioner's appeal was deemed withdrawn before the Board decided the merits of the motion to reopen. Thus, no Board decision on the motion to reopen exists. Additionally, the petition for review does not request review of the immigration judge's removal order or his decision denying the motion to reopen.

**B. Exhaustion of Remedies**

As a prerequisite to seeking judicial review of an order of removal, a petitioner must have "exhausted all administrative remedies available to [her] as of right." 8 U.S.C. § 1252(d)(1); *see also Suassuna v. INS*, 342 F.3d 578, 583 (6th Cir. 2003). If there is a statutory requirement that a plaintiff "exhaust his or her administrative remedies before seeking judicial review, federal courts do not have subject matter jurisdiction to review the plaintiff's claim until the plaintiff has exhausted his or her administrative remedies." *See Bangura v. Hansen*, 434 F.3d 487, 493 (6th Cir. 2006).

In this case, the government claims that the petitioner failed to exhaust her administrative remedies because she withdrew her appeal prior to receiving a final determination. However, this contention ignores the fact that the Board rendered a decision on the petitioner's appeal – concluding that it had been withdrawn automatically by operation of section 1003.4 – and that it was this decision, rather than any affirmative act by the petitioner, that gave final effect to the underlying removal order. After the Board issued its withdrawal order, the petitioner was precluded from seeking any further administrative relief and, thus, has effectively exhausted all available remedies.

Moreover, to find that we lacked jurisdiction due to the petitioner's failure to exhaust would not be in keeping with the purpose of section 1252(d)(1)'s exhaustion requirement. As we have noted, the purpose of that provision is:

> (1) to ensure that the [DHS], as the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to consider a petitioner's claims; (2) to avoid premature interference with the agency's processes; and (3) to allow the BIA to compile a record which is adequate for judicial review.

*Liti v. Gonzales*, 411 F.3d 631, 642 (6th Cir. 2005). Clearly, none of these concerns is implicated by our exercise of jurisdiction in this case. Here, the petitioner sought administrative relief to the farthest extent possible, and the Board had a full opportunity to consider her appeal on the merits but elected not to do so. There is, simply, no just reason why we should not exercise jurisdiction over this appeal.

**C.  Propriety of the Board's Withdrawal Order**

We review the Board's legal conclusions de novo.  *See Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007).  However, we defer to the Board's reasonable interpretations of the Immigration and Nationality Act and accompanying regulations.  *See id.*  Accordingly, the Board's interpretation of the statute and regulations will be upheld unless "arbitrary, capricious, or manifestly contrary to the statute."  *Id.*

We now reach the issue of whether the Board properly issued the withdrawal order.  The petitioner's primary argument is that the withdrawal order was issued in violation of the Board's own regulations.  Specifically, the petitioner claims that 8 C.F.R. § 1003.4, which provides that an appeal is withdrawn if the appellant departs from the United States while the appeal is pending, conflicts with 8 C.F.R. § 1003.23(b)(4)(ii), which provides that a motion to reopen an *in absentia* removal proceeding may be filed at "any time" if the alien demonstrates that she did not receive notice.[3]  However, because we find section 1003.4's withdrawal provision to be inapplicable to this case, we need not reach the question of whether it conflicts with section 1003.23(b)(4)(ii).

As noted above, section 1003.4 mandates that a pending appeal filed by an alien who has departed the country be withdrawn and, thereafter, that the "initial decision in the case . . . be final to the same extent as though no appeal had been taken."  On appeal, the government notes, correctly, that "nothing in the language of 8 C.F.R. § 1003.4 . . . limit[s] application of that section to alien's [sic] who leave the United States of their own volition."  On its face, section 1003.4 does not distinguish between volitional and

---

[3]The regulation states, in pertinent part, as follows:

An order [of removal] entered in absentia pursuant to section 240(b)(5) may be rescinded upon a motion to reopen filed at any time if the alien demonstrates that he or she did not receive notice in accordance with sections 239(a)(1) or (2) of the Act . . . .

8 C.F.R. § 1003.23.

non-volitional departures.[4] Moreover, courts that have examined the issue have rejected the notion that the regulation contains a blanket exception for involuntary departures. *See*, *e.g.*, *Long v. Gonzales*, 420 F.3d 516, 520 (5th Cir. 2005). Indeed, to do otherwise "would require us to read into § 1003.4 an exception that it neither expressly nor implicitly provides." *Id.* Nevertheless, our sister circuits have applied the doctrine of waiver to suggest that involuntary departures may not always be subject to the automatic withdrawal provision in section 1003.4.

In *Long*, for example, the Fifth Circuit has recognized that "[w]aiver is an intentional relinquishment or abandonment of a known right or privilege" applicable to the operation of the withdrawal provision, 420 F.3d at 520 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 458 n. 13 (2004)), although the court gave the term "intentional" a rather broad reading. Long, a Cambodian national under order of removal, had gone on a sight-seeing trip out of Brownsville, Texas, while his appeal of the removal order was pending before the Board. During the trip, the driver of the car in which Long was a passenger inadvertently drove a short distance into Mexico and was denied re-entry for lack of documentation. The Board found that Long had departed from the United States and withdrew his pending appeal. The Fifth Circuit denied the petition for review, holding that although Long's departure could not be considered strictly voluntary, he had effected a departure of "his own free will" when he did not pay attention – or make sure that others were paying attention – and, thereby, ended up on the other side of the border. *Id.* That conduct, according to the court, was sufficient to constitute a waiver of his right to appeal under section 1003.4. *Id.* But, the court left unsettled the question posed in this case, indicating in a footnote:

> We save for another day the question whether, in the absence of a waiver, an alien can be held to have withdrawn his appeal when he . . . is forcibly removed from the country. That question is not before us since Long waived his appeal through his own action.

---

[4] In the context of federal immigration law, "voluntary departure" is a term of art used to describe when the Attorney General has granted an alien permission to depart the United States at the alien's own expense, instead of facing forcible removal. We have, therefore, attempted to avoid using that terminology in the circumstances of this case.

*Long*, 420 F.3d at 520 n.6 (parenthetical marks omitted).

Madrigal has not cited, and we have not found, any reported cases in which the question reserved by the *Long* court has been resolved. Nevertheless, drawing on the Fifth Circuit's waiver analysis, we are persuaded that the withdrawal provision should not be applied in this case. Unlike the cases in which the petitioner either deliberately or inadvertently left the United States,[5] it cannot be said that Madrigal relinquished or abandoned the right to appeal by virtue of her own conduct. Instead, her departure was forced by the government during the pendency of her appeal and, hence, she did not take any action, either purposeful or unwitting, that can be construed as a waiver of her right to contest the immigration judge's decision.

Moreover, principles of fundamental fairness would be violated were we to find, in every case, that section 1003.4 is applicable to pending administrative appeals following the departure of removable aliens regardless of the circumstances of their removal. Here, in addition to appealing the immigration judge's denial of her motion to reopen, Madrigal filed a motion to stay removal pending the disposition of her appeal. Before the Board had ruled on either matter, the government removed her and, thereby, both terminated the pending appeal and mooted the motion for a stay. Madrigal appears to have done all that she could have done to avail herself of the process but was, nevertheless, prevented from doing so. To allow the government to cut off Madrigal's statutory right to appeal an adverse decision, in this manner, simply by removing her before a stay can be issued or a ruling on the merits can be obtained, strikes us as a perversion of the administrative process. We therefore hold that the withdrawal provision of section 1003.4 is inapplicable in this situation.

---

[5] *See*, *e.g.*, *Mansour v. Gonzales*, 470 F.3d 1194, 1198 (6th Cir. 2006) ("[W]hen a person who is under a deportation order, from which he has appealed to the BIA, voluntarily leaves the United States, he has, been deported.") (quoting *Aguilera-Ruiz v. Ashcroft*, 348 F.3d 835, 837 (9th Cir. 2003)). *See also Aguilera-Ruiz*, 348 F.3d at 839 ("[*A*]*ny* voluntary departure from the United States following entry of an order of deportation will be deemed to withdraw a pending appeal and to render the order of deportation final . . . [even if] the trip is 'brief, casual, and innocent'.").

### *CONCLUSION*

For the reasons set out above, we GRANT review of the Board's order in this case, VACATE that order, and REMAND the matter to the Board to allow review on the merits of the petitioner's motion to reopen the proceedings in the immigration court.

---

**CONCURRENCE**

---

KETHLEDGE, Circuit Judge, concurring. The government forcibly removed Maria Madrigal from the United States, and now claims she abandoned her appeal because she left the country. To state that argument should be to refute it; and the Court's opinion, which I fully join, refutes it still more.

I write further to observe that, in a case where the government urges adherence to the putative letter of its regulations to the outermost limits—and I think beyond—of fairness and common sense, the government itself seems not to have complied with some highly germane rules. By way of background, it undisputed that, in November 2004, the government served Madrigal, in person, with a Notice to Appear (NTA). But the NTA did not state the date and time of Madrigal's removal hearing. That hearing was not scheduled until December 2006, at which time the government asserts it sent Madrigal a notice of the hearing date by regular mail. The record before this court contains no proof to support that assertion, and Madrigal claims she never got the notice. But that dispute is for another day; the regulatory point for now is that both the governing statute and the government's own regulation say that service of a notice of removal hearing should not even be *attempted* by mail unless "*personal* service is not practicable[.]" 8 U.S.C. § 1229(a)(1); 8 C.F.R. § 1003.13 (emphasis added). Personal service obviously *was* practicable in November 2004, when Madrigal was personally served with the NTA; and it presumably remained so in December 2006, since Madrigal continued to reside at the same address and jointly owned a local restaurant with her U.S.-citizen husband, as DHS well knew. Perhaps the government nonetheless did make some showing of impracticability that would allow the government lawfully to serve such a critical document by regular mail; but if so, the record before this court lacks any trace of it.

Relatedly, 8 U.S.C. § 1229(c) provides that, in cases where service by mail is permitted, "[s]ervice by mail [of a notice to appear] shall be sufficient *if there is proof of attempted delivery* to the last address provided by the alien[.]" (Emphasis added.)

Even when the government shows personal service to be impracticable, therefore, service by mail is "sufficient" only if the government presents "proof" that it was attempted at the alien's last known address. As noted above, the record before this court, at least, contains no such proof.

Congress presumably enacted these requirements not only to ensure that aliens actually receive notice of removal hearings, but also to prevent the very kind of dispute presented here. Whether the government complied with these requirements in Madrigal's case—or indeed whether it served her at all—is, for now, beyond the evidentiary ken of this court. But I believe that, if the government claims service by mail in future cases before this court, it should include in the record proof that such service was not only factually, but lawfully made.