# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-3105

JOSE CONCEPCION MARIN-RODRIGUEZ,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.

ARGUED APRIL 16, 2010—DECIDED JULY 14, 2010

Before EASTERBROOK, *Chief Judge*, FLAUM, *Circuit Judge*,
and HIBBLER, *District Judge*.[†]

EASTERBROOK, *Chief Judge*.  The Board of Immigration
Appeals believes that it lacks jurisdiction to reconsider
or reopen any of its decisions after the alien has left the
United States. We must decide whether the Board's
understanding is correct.

---

[†]  Of the Northern District of Illinois, sitting by designation.

Jose Concepcion Marin-Rodriguez entered the United States from Mexico by stealth in 1988 and remained undetected until 2005, when he was convicted of using fraudulent documents to obtain employment under the pretense of citizenship. 18 U.S.C. §1546(a). He sought cancellation of removal, contending that a return to Mexico would cause hardship for himself and his family. To be eligible for that relief, an alien usually must submit biometric information that will enable the agency to determine that he is who he claims to be, and to find out whether he has any disqualifying criminal convictions. 8 C.F.R. §1003.47(d). At a hearing in mid-2006, Marin-Rodriguez was told to submit fingerprints and warned that, if he did not, his application would be denied. When the next hearing occurred 15 months later, Marin-Rodriguez still had not complied. The immigration judge deemed his application for cancellation of removal to have been abandoned, see 8 C.F.R. §1003.47(c), and ordered him removed because he is a citizen of Mexico without a visa or any other claim of right to be in the United States.

Marin-Rodriguez appealed to the Board of Immigration Appeals. While that appeal was pending, he submitted a set of fingerprints and asked the Board to remand to the IJ for reconsideration. But in September 2008 the Board deemed his motion untimely and dismissed his appeal. Marin-Rodriguez protested the next month, via a motion for reconsideration, that a motion for remand filed while an appeal is pending cannot be untimely. (The *submission* of fingerprints was late, but what the Board said is that the *motion* was untimely.) On April 29, 2009, the Board

granted this motion and remanded to the IJ, stating that its decision of September 2008 had been mistaken in deeming untimely the motion for remand.

Before the IJ could act, however, the Department of Homeland Security asked the Board to reconsider. It observed that Marin-Rodriguez had been removed to Mexico on April 10, 2009, after both the Bureau of Immigration and Customs Enforcement and the Board had denied his requests for a stay of removal. The Board granted the Department's motion and withdrew the remand to the IJ. This order states: "As the respondent has been removed, the Board was without jurisdiction to consider the respondent's motion to reconsider. *See* 8 C.F.R. §1003.2(d)." This is the order that Marin-Rodriguez asks us to set aside.

The Board's belief that it lacks jurisdiction to grant relief to an alien who is no longer in the United States has a pedigree dating to 1954. See *Matter of G– y B–*, 6 I. & N. Dec. 159 (BIA 1954) (discussing the 1952 version of the regulation), reaffirmed in *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646 (BIA 2008). One court of appeals has held that the Board's refusal to adjudicate these requests conflicts with 8 U.S.C. §1229a(c)(7)(A). See *William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007). Other circuits have held that the Board is entitled to treat an alien's departure as an event that deprives it of jurisdiction. See *Toora v. Holder*, 603 F.3d 282, 285 (5th Cir. 2010); *Mendiola v. Holder*, 585 F.3d 1303 (10th Cir. 2009); *Pena-Muriel v. Gonzales*, 489 F.3d 438, 441–43 (1st Cir. 2007); *Mansour v. Gonzales*, 470 F.3d 1194, 1198 (6th Cir. 2006); *Singh v. Gonzales*, 468 F.3d

135, 140 (2d Cir. 2006). We were asked to consider this subject in *Munoz de Real v. Holder*, 595 F.3d 747 (7th Cir. 2010), but bypassed it, because the alien's request was untimely. We cannot duck here, for the Board itself has concluded that Marin-Rodriguez satisfied its timing requirements.

The fourth circuit's conclusion rests on §1229a(c)(7)(A), which says that "[a]n alien may file one motion to reopen proceedings under this section". We don't agree with the fourth circuit's understanding of this statute, because the statement "a litigant may file motion X" differs from the statement "the opportunity to file motion X cannot be limited." Consider a simple rule: "A motion to reopen must be filed within 90 days of the final decision." That does not detract from the entitlement to file a motion, any more than the time limit for appeal undercuts the right to file one appeal. Cf. *Lantz v. CIR*, No. 09-3345 (7th Cir. June 8, 2010) (the Treasury Department is entitled to set a two-year deadline for seeking innocent-spouse relief in a tax proceeding, even though the statute lacks an outer limit). People have a right to trial by jury, but not if they settle their dispute; criminal defendants have a right to appeal, but they may surrender that right as part of a plea bargain. *United States v. Wenger*, 58 F.3d 280 (7th Cir. 1995). And although an alien is entitled to seek permission to depart voluntarily, someone who applies for judicial review of a removal order gives up that opportunity. *Dada v. Mukasey*, 554 U.S. 1 (2008); 8 C.F.R. §1240.26(b)(3)(iii), adopted and explained at 73 Fed. Reg. 76927 (Dec. 18, 2008). If the Supreme Court sees no incompatibility between a statutory right to apply

for something and an implied-withdrawal approach, it is hard to fault the Board for adopting a similar view. Thus an alien with a right to move for reconsideration may give up that right by a specified act. Whether the particular condition the Board has attached to exercise of this particular entitlement—that the alien be in the United States—is a proper one can't be resolved by pointing to the existence of the right. The validity of the condition must be ascertained on other grounds.

The Board relied on 8 C.F.R. §1003.2(d), which reads:

> A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

Similar language appears in 8 C.F.R. §§ 1003.4 and 1003.23(b). The regulation says that departure from the United States "shall constitute a withdrawal" of the motion. It is strange phraseology as applied to an alien whose departure was beyond his control; it amounts to saying that, by putting an alien on a bus, the agency may "withdraw" its adversary's motion. It is unnatural to speak of one litigant withdrawing another's motion. This led us to wonder whether the regulation—which does not

use or allude to the concept of jurisdiction—should be understood as meaning that the Board has decided to exercise its discretion to deny all post-decision motions by aliens who have left the United States. An agency may exercise discretion categorically, by regulation, and is not limited to making discretionary decisions one case at a time under open-ended standards. See *Lopez v. Davis*, 531 U.S. 230 (2001). But neither the Board nor the regulation describes the dismiss-on-departure rule as a categorical exercise of discretion. Given *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943), we must confine attention to the Board's stated rationale: lack of jurisdiction.

As a rule about subject-matter jurisdiction, §1003.2(d) is untenable. The Immigration and Nationality Act authorizes the Board to reconsider or reopen its own decisions. It does not make that step depend on the alien's presence in the United States. Until 1996 deportation proceedings (as they were then called), and judicial review of deportation orders, automatically halted when the alien left this nation. 8 U.S.C. §1105a(c) (1994). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 repealed §1105a(c). Pub. L. 104-208, division C, title III, subtitle A, §306(b), 110 Stat. 3009–546, 3009–612. One would suppose that this change also pulled the rug out from under *Matter of G– y B–* and similar decisions, based as they were on the earlier norm that departure ended all legal proceedings in the United States, though the Board nonetheless held in *Matter of Armendarez-Mendez* that the 1996 repealer did not affect motions to reconsider or reopen.

The fact remains that since 1996 nothing in the statute undergirds a conclusion that the Board lacks "jurisdiction"—which is to say, adjudicatory competence, see *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243 (2010) (collecting cases)—to issue decisions that affect the legal rights of departed aliens. The Board certainly could have decided Marin-Rodriguez's appeal from the IJ's removal order, notwithstanding his removal, if he had not asked for the remand. And if the Board had the authority to decide his appeal, why did it lose that authority just because it thought that the IJ (rather than the Board itself) should be the first to consider whether to accept Marin-Rodriguez's belatedly submitted fingerprints?

The Supreme Court recently held that an administrative agency is not entitled to contract its own jurisdiction by regulations or by decisions in litigated proceedings. *Union Pacific R.R. v. Brotherhood of Locomotive Engineers*, 130 S. Ct. 584 (2009). *Union Pacific* post-dates most decisions in other circuits that have approved the Board's conclusion that it lacks "jurisdiction" to consider motions filed by aliens who have left the United States, and circuits that have addressed this issue after *Union Pacific* do not mention it. *Union Pacific*, *Reed Elsevier*, and *Morrison v. National Australia Bank Ltd.*, No. 08-1191 (U.S. June 24, 2010), slip op. 4–5, are just the most recent examples of the Supreme Court's effort during the last decade to draw with greater precision the line between "jurisdictional" and other legal rules. Neither the Board's decision in *Armendarez-Mendez*, nor any other circuit's opinion concerning the "jurisdictional" characterization of 8 C.F.R. §1003.2(d), mentions the Supreme Court's recent cases

observing that legal rules can be mandatory without being jurisdictional and insisting that courts (and agencies) exercise their full jurisdiction. We think that *Union Pacific* is dispositive in favor of the holding in *William*—though on a rationale distinct from the fourth circuit's.

There is another route to the same result. Two courts of appeals have held that §1003.2(d) and equivalent regulations do not apply when the alien is removed involuntarily—in other words, that it makes sense to treat departure from the United States as the withdrawal of a motion only when the alien could have remained to see the litigation through. *Coyt v. Holder*, 593 F.3d 902, 905–07 (9th Cir. 2010); *Madrigal v. Holder*, 572 F.3d 239, 243–45 (6th Cir. 2009). The fourth circuit reached the same conclusion using its approach in *William*. See *Sadhvani v. Holder*, 596 F.3d 180, 183 (4th Cir. 2009). Three other circuits are to the contrary, though without much discussion. *Paredes v. Attorney General*, 528 F.3d 196, 199 n.3 (3d Cir. 2008); *Ugokwe v. Attorney General*, 453 F.3d 1325, 1328 (11th Cir. 2006) (dictum); *Ahmad v. Gonzales*, 204 Fed. App'x 98, 99 (2d Cir. 2006) (non-precedential).

The view taken by the sixth and ninth circuits is hard to reconcile with the principle that the judiciary should accept an agency's plausible reading of its own regulations. *Auer v. Robbins*, 519 U.S. 452, 461 (1997); see also *Coeur Alaska, Inc. v. Southeast Alaska Conservation Council*, 129 S. Ct. 2458, 2467–70, 2472–74 (2009). The Board understands §1003.2(d) as equally applicable to voluntary and involuntary departures, and the text of the regulation supports that view notwithstanding the oddity of ap-

plying the word "withdrawal" to the consequence of an involuntary departure. But because the Board also believes that the regulation curtails its jurisdiction—which is *why* it applies to involuntary and voluntary departures alike—we come out in the same place as the sixth and ninth circuits on the basis of *Union Pacific*, without suggesting that the Board has misunderstood the regulation.

The Board may well be entitled to recast its approach as one resting on a categorical exercise of discretion, but it cannot insist that it has elected to foreswear subject-matter jurisdiction that it possesses under a statute. A recent decision suggests that the Board may be in the process of abandoning its "jurisdictional" characterization of the departure rule. *Matter of Bulnes-Nolasco*, 25 I. & N. Dec. 57 (BIA 2009), holds that the Board does possess jurisdiction if a departed alien contends that she did not receive proper notice of proceedings before the immigration judge. It is hard to see how the arguments an alien offers in support of reopening can affect whether the Board has subject-matter jurisdiction—though easy to see how a distinction could be justified as a conclusion that the Board always denies certain kinds of motions as an exercise of discretion, while entertaining others on the merits.

The Board's rationale for denying Marin-Rodriguez's motion was the lack of jurisdiction, so he is entitled to a remand even if the Board is rethinking its approach. Marin-Rodriguez may not have much to gain—his conviction for immigration-related fraud may block adjustment of status even if the IJ decides to accept the untimely

fingerprints—but the *Chenery* principle requires us to send this subject to the agency rather than decide for ourselves whether the conviction is for a crime of moral turpitude. See also, e.g., *Gonzales v. Thomas*, 547 U.S. 183 (2006). The IJ thought that §1546(a) establishes a crime of moral turpitude, and if that's right then adjustment of status is unavailable, but the Board of Immigration Appeals dismissed Marin-Rodriguez's appeal without reaching that issue.

Before we wrap up, a few words are in order about why we have elected to decide this case at all. Three days before the date for oral argument, counsel for the Attorney General filed a motion asking us to remand the proceeding to the Board. Normally motions to remand are granted as a matter of course, see *Ren v. Gonzales*, 440 F.3d 446 (7th Cir. 2006), but Marin-Rodriguez opposed this motion and we directed the parties to come prepared to discuss the subject at oral argument.

The motion did not say what the Board planned to do with the proceeding on remand: entertain the matter on the merits, re-remand to the IJ (as Marin-Rodriguez wants), or just write a different opinion. At oral argument we asked the Attorney General's lawyer whether the Board has changed its mind and now believes that it has jurisdiction to entertain the sort of motion that Marin-Rodriguez presented. Counsel said that he did not know—that he spoke only for the Attorney General and not for the Board or the Department of Homeland Security. Yet the Attorney General has not exercised his authority to withdraw this proceeding from the Board and

decide it himself. See 8 C.F.R. §1003.1(h). The motion requested a remand to the Board, not to the Attorney General. What's more, counsel stated that the Department of Justice has not changed the view, expressed in its brief, that the Board is *right* in believing that it lacks jurisdiction.

There is no point in remanding to a body that has already declared the absence of subject-matter jurisdiction, unless it has reconsidered that issue or is prepared to do so. The motion to remand does not moot the controversy. Marin-Rodriguez wants relief different from what the Attorney General is prepared to allow. So we deny the motion to remand.

The petition for review is granted, and the proceeding is remanded to the Board for further consideration consistent with this opinion.