FILED
United States Court of Appeals
Tenth Circuit

July 1, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ARTURO MONTANO-VEGA,

     Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

     Respondent.

No. 11-9578

---

**ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS**

---

Shawn D. Meade, Denver, Colorado, for Petitioner.

Jamie M. Dowd, Senior Litigation Counsel (Ernesto H. Molina, Jr., Assistant
Director, with her on the brief), Office of Immigration Litigation, United States
Department of Justice, Washington, D.C., for Respondent.

---

Before **BRISCOE**, Chief Judge, **GORSUCH** and **MATHESON**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

Arturo Montano-Vega admits he was in this country unlawfully. When the

government charged him with as much, he didn't contest the point but asked for

permission to leave the country voluntarily. Mr. Montano-Vega wanted to leave

on his own accord in order to avoid a congressionally mandated ten-year bar on readmission for aliens who have been "ordered removed." *See* 8 U.S.C. § 1182(a)(9)(A)(ii)(I).

The Immigration Judge assigned to Mr. Montano-Vega's case refused his request. The decision whether to grant voluntary departure is a discretionary one. *See* 8 U.S.C. § 1229c(b)(1). And the IJ said he thought Mr. Montano-Vega didn't merit an exercise of that discretion because of his criminal record.

This left Mr. Montano-Vega with a hard choice. He filed an appeal with the Board of Immigration Appeals contesting the IJ's decision. But to continue to pursue the appeal he had to remain in the country. If he left, the BIA would deem his appeal abandoned as a matter of law under 8 C.F.R. § 1003.4. That, in turn, would leave him subject to a ten-year bar on readmission for aliens who have "departed the United States while an order of removal was outstanding." 8 U.S.C. § 1182(a)(9)(A)(ii)(II). By contrast, if he stayed in the country to pursue his appeal, he would quickly face *another* statutory ten-year bar applicable to aliens unlawfully present in the country for a year or more. *See id.* § 1182(a)(9)(B)(i)(II). To be sure, that bar might not apply if he won his appeal. *See* U.S. Citizenship & Immigration Servs., Dep't of Homeland Sec., *Adjudicator's Field Manual* § 40.9.2(b)(3)(H)(iii) ("If the denial of voluntary departure by the Immigration Judge is reversed on appeal by the BIA, the time from the denial to the reversal will be considered authorized stay in the United

States."). But if he *lost* his appeal, he would be unable to apply for readmission for ten years both because he would have thus been "ordered removed," 8 U.S.C. § 1182(a)(9)(A)(ii)(I), and because he would have also accumulated a year of unlawful presence, *id.* § 1182(a)(9)(B)(i)(II). *See Barillas-Alverez v. Reno*, No. 98-Civ-5445, 2000 WL 204523, at *4 (S.D.N.Y. Feb. 18, 2000) ("If [an alien] is found to have been unlawfully present for at least one year and ordered removed, she will be subject to both the bars . . . ."). And while these grounds for inadmissibility may be waived in certain circumstances, *see Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1165 (10th Cir. 2004), Mr. Montano-Vega faced the daunting prospect of having to secure two waivers, not just one, if he stayed and lost.

In the face of all this, Mr. Montano-Vega decided leaving was the better option. Admittedly, no option — staying or going — held much attraction from his perspective. But neither is there any doubt that the choice he made bore a real and rationally attractive advantage to him, guaranteeing him that he'd have to face and seek a waiver from just one rather than potentially two statutory bars. As he knew it would, soon after he left the BIA proceeded to dismiss his appeal pursuant to § 1003.4.

Now Mr. Montano-Vega appeals the BIA's decision to us, challenging the legality of its application of § 1003.4 to his case. This much, everyone accepts,

we have authority to consider. The BIA's final order rested on § 1003.4 and we may review the BIA's final orders pursuant to 8 U.S.C. § 1252(d)(1).

In a different direction, Mr. Montano-Vega *also* asks us to consider whether the IJ abused his discretion in denying him voluntary departure under § 1229c(b)(1). For its part, however, the government disputes our authority to address this question. It argues that no judicially reviewable final order exists on the § 1229c(b)(1) question precisely because the BIA dismissed his appeal under § 1003.4. Put differently, the government suggests Mr. Montano-Vega's request for voluntary departure wasn't administratively exhausted because the challenge was deemed abandoned first.

That's right, up to a point. The only final order we have before us is the BIA's order invoking § 1003.4 and holding Mr. Montano-Vega's appeal abandoned as a matter of law by his departure. *See Mejia-Ruiz v. INS*, 51 F.3d 358, 365 (2d Cir. 1995); *see also Moreno v. Gonzales*, 206 F. App'x 815, 818 (10th Cir. 2006). Of course, if we find the BIA's order in error, its invocation of § 1003.4 legally lacking in some respect, we might grant the petition for review and remand the case for further proceedings in the BIA. In turn the BIA might then have to address the merits of Mr. Montano-Vega's § 1229c(b)(1) challenge, just as he wishes. But all that is neither here nor there unless Mr. Montano-Vega

can first demonstrate that the BIA's final order resting on § 1003.4 was itself unlawful in some way.[1]

Taking up that challenge, Mr. Montano-Vega offers several theories why, in his estimation, the BIA's invocation of § 1003.4 was impermissible.

First, he says the regulation itself must be held invalid because of our decision in *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 819 (10th Cir. 2012) (en banc), and similar decisions in other circuits. But when it comes to this case, those cases are beside the point. While they *do* strike down a BIA regulation, they strike down an entirely different one, 8 C.F.R. § 1003.2(d), *not* § 1003.4. And they do so because *that* regulation, purporting to prohibit departed aliens from filing motions to reopen or reconsider closed immigration cases, was found to be inconsistent with the express terms of 8 U.S.C. § 1229a(c), a statute guaranteeing *all* aliens one motion to reopen and one motion to reconsider. Mr. Montano-Vega offers us no reason to think § 1003.4 is destined for the same fate, violating the terms of § 1229a(c) or any other statute for that matter.

Instead, Mr. Montano-Vega contends that, as a policy matter, § 1003.4 is just as distasteful as § 1003.2(d). He emphasizes that both seek to restrain the

---

[1] Even if we were to vacate the BIA's reliance on § 1003.4 and the BIA was forced to take up the voluntary removal question under § 1229c(b)(1), this isn't to say we would necessarily have authority to entertain a later petition for review on the BIA's resolution of that question. Existing authority suggests that discretionary decisions to permit or deny voluntary removals aren't always judicially reviewable. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007).

litigation options of departed aliens, stripping them of the right to pursue administrative relief once they depart. But this line of argument seriously mistakes the nature of our business. No doubt, we can and will strike down regulations that defy Congress's statutes or the Constitution's guarantees. We do not, however, amend, revise, or undo administrative regulations just because they may not be to a litigant's liking or our own. Unless some violation of law is involved, the business of deciding the sometimes hard, often fine, and nearly always contestable questions of immigration policy belongs to the legislature and executive, not the courts.

Second, Mr. Montano-Vega briefly seeks to take up the task of showing a constitutional violation, something it is assuredly our business to address. He asserts that the BIA's application of § 1003.4 to his case infringed his due process rights. But then he fails to explain how. While entitled to "minimal procedural due process" protections, it is settled law that aliens enjoy no constitutionally protected liberty or property interest in obtaining discretionary relief from removal under 8 U.S.C. § 1229c(b)(1). *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009). It is settled, too, that aliens possess no due process right to an administrative appeal. *Yuk v. Ashcroft*, 355 F.3d 1222, 1229 (10th Cir. 2004). In light of all this, it is unclear how Mr. Montano-Vega's due process rights might have been infringed by the application of § 1003.4 to his case, and he never tries to tell us.

Third, Mr. Montano-Vega points us to two out-of-circuit opinions. He says they contain important qualifications and teachings we must consider. His reference to these opinions does add at least a little more meat to the bones of his constitutional claim, but in the end they still fail to help his cause.

The first case is *Martinez-De Bojorquez v. Ashcroft*, 365 F.3d 800 (9th Cir. 2004). There, the BIA took some four years to decide the petitioner's appeal of an order revoking her status as a lawful permanent resident. While the appeal was pending, the petitioner visited a doctor across the border a few times, as her "green card" had always allowed her to do in the past. When it finally reached its decision, the BIA used these visits to invoke § 1003.4 and dismiss the petitioner's appeal. The Ninth Circuit held that, in these very particular circumstances, the BIA had a due process obligation to alert the petitioner in advance to the effect her voluntary departures would have on her ability to pursue an appeal.

None of this bears any application to our case. Whatever the propriety of the Ninth Circuit's due process analysis and holding (questions we do not need to and do not pass on today), they offer Mr. Montano-Vega no help on their own terms. Unlike the petitioner there, our petitioner here does not complain that he lacked notice about the effect his departure from the country would have on his appeal. Neither is there any hint in the record before us that he was used to traveling outside the country without consequence. To the contrary, by all

indications Mr. Montano-Vega knew and understood all too well what his departure would mean.

The other case Mr. Montano-Vega cites is *Madrigal v. Holder*, 572 F.3d 239 (6th Cir. 2009). There the government physically removed an alien from the country and then obtained a § 1003.4 dismissal of her appeal. The Sixth Circuit acknowledged that according to the text of § 1003.4 *any* departure from the country suffices to end an alien's appeal. *See id.* at 244 ("On its face, section 1003.4 does not distinguish between volitional and non-volitional departures."). It also "rejected the notion that the regulation contains a blanket exception for involuntary departures." *Id.* But it then proceeded to carve out an exception to the rule, holding that when the government physically removes an alien from the country the alien does not abandon her appeal. It's unclear whether the Sixth Circuit thought this exception could be found lurking somewhere in the terms of the rule itself, or whether it thought the Constitution's due process guarantee required it. What is clear is that the court conceived of its exception as very narrow indeed: by its terms it applies only to aliens the government physically removes, not to aliens who leave on their own motion, either "deliberately or inadvertently," "purposeful[ly] or unwitting[ly]." *Id.* at 245.

To know that much is to know the Sixth Circuit's exception doesn't help Mr. Montano-Vega. Whatever the propriety of the exception (something, again,

we have no need to pass upon), it simply doesn't apply here.  Mr. Montano-Vega was not physically removed by the government, but left on his own.

To this, Mr. Montano-Vega replies that he decided to leave only under the shadow of the unlawful-presence bar and facing unwanted consequences no matter whether he chose to stay or depart.  He says these facts compromised his choice, rendering it less than fully free, and adds that he did not desire either to leave the country or to withdraw his appeal any more than an individual the government physically removes.

We cannot agree that an alien's intentions or motives make a difference.  We don't understand *Madrigal* as suggesting the BIA must examine an alien's state of mind — to determine whether he intended to relinquish his right to appeal — before deeming his appeal withdrawn.  Neither would we hold so much ourselves.  Such an interpretation of § 1003.4 has no foundation in the regulation's text.  It would also run afoul of many other circuit opinions holding that even inadvertent, unwanted, or accidental departures can lawfully trigger the regulation.  *See, e.g.*, *Long v. Gonzales*, 420 F.3d 516, 520 (5th Cir. 2005) (per curiam); *Aguilera-Ruiz v. Ashcroft*, 348 F.3d 835, 839 (9th Cir. 2003).  And no constitutional imperative demands a different result in these situations.  Admittedly, the government may sometimes coerce an individual into giving up important rights and in those instances courts may refuse to recognize the government's claims of waiver.  *See, e.g.*, *Missouri v. Seibert*, 542 U.S. 600, 616-

17 (2004) (plurality opinion) (right against self-incrimination); *United States v. Jackson*, 390 U.S. 570, 582 (1968) (right to a jury trial); *Walker v. Johnson*, 312 U.S. 275, 286-87 (1941) (right to counsel). Admittedly, Mr. Montano-Vega alleges that Congress and the BIA did that very thing here, coercing aliens like him into prematurely leaving the country even if it means giving up an administrative appeal. But, again, in our legal order courts may intercede to override governmental action, potentially coercive or otherwise, only when that action violates some positive law or "needlessly penalizes the assertion of a constitutional right." *Jackson*, 390 U.S. at 583. Mr. Montano-Vega does not (and indeed cannot) assert either of these things here. He alleges no violation of any statute or regulation, and it is long settled that he has no constitutional right to litigate a BIA appeal. *See Yuk*, 355 F.3d at 1229.

In holding that § 1003.4 isn't susceptible to the legal challenges Mr. Montano-Vega poses, we take care to emphasize that we do not hold any more than that. We take cases as they come and in this one it's enough to say that the particular arguments Mr. Montano-Vega advances to undo the application of § 1003.4 to his case are legally unavailing. We deny Mr. Montano-Vega's challenge to the order of the BIA deeming his appeal withdrawn under § 1003.4 and otherwise dismiss his petition for review for lack of jurisdiction. Mr. Montano-Vega's motion for leave to proceed *in forma pauperis* is granted.

- 10 -