[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13382

_____

FRANCO P. CLEMENT,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A040-379-929

_____

Before ROSENBAUM, BRANCH, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal comes to us on a petition for review of the Board of Immigration Appeals. During removal proceedings, Franco Clement wrote to the Board of Immigration Appeals asking to withdraw his appeal of an immigration judge's decision and to be deported. The Board granted his withdrawal request. He now asserts that the federal laws governing derivative citizenship are unconstitutional and seeks a declaration that he is a U.S. citizen as a judicial remedy. We conclude that Clement forfeited judicial review of this claim when he deliberately withdrew his appeal to the Board and asked to be deported. Accordingly, we deny his petition for review.

## I.

Franco Clement was born in Liberia in 1971 to parents who never married. Shortly after his birth, his father obtained a decree of legitimation from a Liberian court. Then in 1979, Clement's father naturalized to U.S. citizenship. Clement's mother later also naturalized to U.S. citizenship—after Clement's eighteenth birthday. And in 1986, when Clement was a teenager, he began to reside in the United States as a lawful permanent resident.

After his admission to the United States, Clement was convicted of four criminal offenses relevant to the removal proceedings against him: two offenses under New Jersey law for possessing a controlled substance with intent to distribute it, one offense

under North Carolina law for possessing a controlled substance with intent to sell or deliver it, and one federal mail fraud offense. Because of these convictions, the Department of Homeland Security initiated removal proceedings against Clement in 2020.

Before an immigration judge in the Department of Justice, DHS alleged that Clement is a citizen of Liberia and not a U.S. citizen. In response, Clement asserted U.S. citizenship based on his parents' citizenship and moved to terminate the removal proceedings against him. The law that applies to a claim of derivative citizenship is "the law in effect when the last material condition [for obtaining derivative citizenship] was met." *Levy v. U.S. Att'y Gen.*, 882 F.3d 1364, 1366 n.1 (11th Cir. 2018). And so, Clement's assertion of citizenship turned on an application of the now-repealed 8 U.S.C. § 1432(a).

When Clement began residing in the United States in 1986, former Section 1432(a) provided three paths to citizenship for "[a] child born outside of the United States" to noncitizen parents. First, a child may become a citizen if both parents naturalize before the child turns eighteen and the child lawfully and permanently resides in the United States "at the time of the naturalization of the parent last naturalized." 8 U.S.C. § 1432(a)(1), (4)-(5). Second, a child may become a citizen if one parent has died and the surviving parent naturalizes before the child turns eighteen and while the child lawfully and permanently resides in the United States. *Id.* § 1432(a)(2), (4)-(5). Third, a child may become a citizen upon "[t]he naturalization of the parent having legal custody of the child when there has

been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." *Id.* § 1432(a)(3). As with the first two paths to citizenship, the parent's naturalization must occur before the child turns eighteen and while the child lawfully and permanently resides in the United States. *Id.* § 1432(a)(4)-(5).

After finding that Clement's paternity was never formally legitimated by a Liberian court, the immigration judge determined that Clement did not derive citizenship from his parents under the third path that Section 1432(a) provides because he was born out of wedlock and his mother did not naturalize before his eighteenth birthday. Having concluded that Clement was not a citizen, the immigration judge issued an order in June 2020 ruling that Clement was subject to removal. Clement waived his appeal of the decision to the Board of Immigration Appeals.

In April 2021, however, Clement submitted new evidence to the immigration court regarding his citizenship claim (including a decree of legitimation from a Liberian probate court), which an immigration judge construed as a motion to reopen and terminate proceedings. In an order issued on April 30, 2021, the immigration judge denied Clement's motion to reopen as untimely, concluding that Clement did not establish equitable tolling of the ninety-day filing deadline. The immigration judge's April 30, 2021, order also ruled that *sua sponte* reopening of removal proceedings under 8 C.F.R. § 1003.23(b)(1) was not warranted given the continued

failure of Clement's citizenship claim. The immigration judge conceded that Clement's new evidence proved that his paternity was, in fact, legitimated by a Liberian court, contrary to the previous finding. But the immigration judge determined that Clement's citizenship claim still failed because Section 1432(a), as written, would allow Clement to derive citizenship from his parents only if his both his parents had naturalized before his eighteenth birthday, and his mother had not.

Clement then appealed the immigration judge's April 30, 2021, order but ultimately withdrew his appeal by filing a handwritten and signed "motion to withdraw appeal" with the Board stating his desire to withdraw his appeal. The motion said: "I will [sic] like to withdraw Appeal to the B.I.A. And give up and be deported. I do not want to be in detention Anymore." The "motion to withdraw appeal" is dated July 5, 2021. On August 31, 2021, the Board issued an order granting Clement's motion to withdraw his appeal.

Clement filed a petition for review in this Court on September 30, 2021, thirty days after the Board's order granting his motion to withdraw his appeal.

## II.

We review our subject matter jurisdiction over a petition for review *de novo*. *Lin v. U.S. Att'y Gen.*, 677 F.3d 1043, 1045 (11th Cir. 2012).

## III.

In the petition for review before us, Clement asserts that former 8 U.S.C. § 1432 unconstitutionally discriminates based on race and gender in a way that precludes him from deriving his father's U.S. citizenship. Before we may entertain the merits of Clement's arguments, we must determine the extent of our jurisdiction over Clement's petition for review. *See Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006). We conclude that we have jurisdiction to review whether the Board erroneously withdrew Clement's appeal, but we cannot reach his constitutional arguments because he withdrew his appeal to the Board and asked to be deported.

We divide our discussion into two parts. First, we establish that we may review whether the Board properly deemed an appeal withdrawn when a petition for review follows from a withdrawal order. Second, we conclude that we cannot review Clement's substantive arguments because he does not challenge the Board's decision to deem his appeal withdrawn and he abandoned his claims by withdrawing his appeal and asking to be deported.

### A.

Clement's petition for review comes to us following a Board of Immigration Appeals order deeming his appeal to the Board voluntarily withdrawn. Section 242 of the Immigration and Nationality Act, codified as 8 U.S.C. § 1252, governs our jurisdiction over removal proceedings. Section 1252(a)(1) grants jurisdiction to

review "final order[s] of removal." *Mata v. Lynch*, 576 U.S. 143, 147 (2015) (quoting 8 U.S.C. § 1252(a)(1)).

The Attorney General argues that the Board's withdrawal order is not a "final order of removal" over which we have jurisdiction under Section 1252(a)(1). Clement argues that we have jurisdiction and goes one step further; he argues that we can consider the merits of his appeal to the Board, even if the Board correctly declared his appeal withdrawn. We conclude that neither party is correct. We have jurisdiction under Section 1252 to determine whether the Board correctly deemed Clement's appeal withdrawn, but we cannot review the merits of the withdrawn appeal itself.

We have not previously decided whether an order granting a motion to withdraw an appeal to the Board is a final order of removal. But several of our sister circuits have concluded that an order deeming an appeal withdrawn is a final order of removal. *E.g.*, *Madrigal v. Holder*, 572 F.3d 239, 242 (6th Cir. 2009); *Lopez-Angel v. Barr*, 952 F.3d 1045, 1047 (9th Cir. 2020); *Montano-Vega v. Holder*, 721 F.3d 1175, 1177-78 (10th Cir. 2013); *see also Long v. Gonzales*, 420 F.3d 516, 519-21 (5th Cir. 2005) (exercising jurisdiction over petition for review from Board order withdrawing appeal without expressly addressing the jurisdictional question).

These courts have gone on to evaluate the Board's decision to allow the withdrawal of the appeal. But none of our sister circuits have reached the merits of the appeal that the Board deemed withdrawn, even when they have concluded that the Board erred. *E.g.*, *Madrigal*, 572 F.3d at 241 (holding the Board erroneously

deemed the appeal withdrawn and remanding to the Board "for further proceedings on the merits"); *Lopez-Angel*, 952 F.3d at 1049-50 (granting the petition to reinstate appeal to Board and "express[ing] no opinion on the merits of that appeal"); *Montano-Vega*, 721 F.3d at 1178 ("The only final order we have before us is the BIA's order invoking § 1003.4 and holding [the petitioner's] appeal abandoned . . . ."); *Long*, 420 F.3d 520-21 (concluding the Board correctly deemed appeal withdrawn). We now join our sister circuits in both respects.

We start with the question of whether the Board's August 31, 2021, decision granting Clement's motion to withdraw is a final order of removal. A final order of removal "is a final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)). The Supreme Court has explained that we have jurisdiction to review only the rulings that "affect the validity of [a] final order of removal." *Id.*

We believe the Board's August 31, 2021, order granting Clement's motion to withdraw is a final order of removal subject to our review.

For starters, the denial of a motion to reopen removal proceedings is a final order of removal under Section 1252(a)(1). *Mata*, 576 U.S. at 147-48. Accordingly, there is no dispute that the immigration judge's underlying decision—the denial of Clement's motion to reopen—was subject to our review. *See Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1261 (11th Cir. 2003) (recognizing we have

jurisdiction "to review orders denying motions to reopen any such final order").

Next, although the Board's August 31, 2021, order granting withdrawal of the appeal is not an actual denial of a motion to reopen, it "is the logical and functional equivalent of [a final] order." *Madrigal*, 572 F.3d at 242; *accord Lopez-Angel*, 952 F.3d at 1047. Just like any other ruling that ends an appeal, an order declaring an appeal to be withdrawn "cut[s] off the petitioner's opportunity for a substantive appellate determination" and gives "final effect to the immigration judge's" underlying order denying the request to reopen. *Madrigal*, 572 F.3d at 242. As a practical matter, if we could not review the Board's withdrawal orders, then the Board could insulate removal orders from judicial review simply by deeming appeals withdrawn. The bottom line: because the Board's withdrawal order gave effect to the immigration judge's removal order, we have jurisdiction to review the Board's August 31, 2021, withdrawal order.

But the scope of our review of a withdrawal order is no different from the scope of our review of any other final order of removal. We review the Board's decision—not the immigration judge's decision—unless the Board "expressly adopted" the immigration judge's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947-48 (11th Cir. 2010) (quoting *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009)). And we may review "only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." *Nasrallah*, 140

S. Ct. at 1691. The scope of our review reflects the well-established administrative law principle that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *accord Calcutt v. FDIC*, 598 U.S. ___, 143 S. Ct. 1317, 1318 (2023) (same).

In this case, our review is limited to whether the Board correctly deemed Clement's appeal to be withdrawn. The Board did not expressly adopt the immigration judge's decision with respect to Clement's derivative citizenship claim such that we could review the merits of Clement's arguments. Instead, the Board withdrew Clement's appeal on his own motion, which brought Clement's administrative proceedings to a conclusion. We may review that determination, but Clement does not challenge it. *Cf. Lopez-Angel*, 952 F.3d at 1047 (challenging Board's determination that petitioner withdrew appeal by leaving the country). Clement's concession that the Board's determination was correct to withdraw his appeal (with which we agree) resolves the only issue presented for our review.

## B.

If Clement did not seek a declaration that he is a U.S. citizen, our review of his petition could end here. But Clement argues that we must review his claim to be a U.S. citizen, even if we would ordinarily not do so. Specifically, he contends Section 1252(b)(5)(A) grants courts a special kind of jurisdiction over citizenship claims. And he argues that grant of jurisdiction overrides any other

limitations on our jurisdiction under Section 1252. Put differently, Clement says we must reach the merits of his citizenship claim, even though we ordinarily would be limited to determining whether the Board correctly withdrew his appeal. Clement also asks us to overlook the fact that he voluntarily asked the Board to withdraw his appeal and deport him.

The government cannot deport a citizen through the administrative process that it uses for noncitizens. *See Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922). Section 1252(b)(5) provides for the "[t]reatment of nationality claims" that arise during this process. It says that, if a petitioner claims to be a U.S. citizen in removal proceedings, "and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court *shall* decide the nationality claim." 8 U.S.C. § 1252(b)(5)(A) (emphasis added). But if a genuine issue of material fact is presented, "the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim." *Id.* § 1252(b)(5)(B).

We acknowledge that some of our sister circuits share Clement's view that Section 1252(b)(5)(A) is an independent jurisdictional grant for the courts of appeals to review citizenship claims. *E.g.*, *Dessouki v. Att'y Gen. of U.S.*, 915 F.3d 964, 966-67 (3d Cir. 2019); *Duarte-Ceri v. Holder*, 630 F.3d 83, 87 (2d Cir. 2010); *Anderson v. Holder*, 673 F.3d 1089, 1096 (9th Cir. 2012); *Joseph v. Holder*, 720 F.3d 228, 230 (5th Cir. 2013). Our sister circuits have construed Section

1252(b)(5)(A) as a jurisdictional grant based on their belief that the Constitution guarantees judicial review of a citizenship claim. *See Dessouki*, 915 F.3d at 967; *Duarte-Ceri*, 630 F.3d at 87; *Anderson*, 673 F.3d at 1096; *Joseph*, 720 F.3d at 230.

We need not answer questions about whether the Constitution or Section 1252(b)(5)(A) provides us with jurisdiction to decide citizenship claims like the one presented by Clement. Even if we assume—without deciding—that our sister circuits are correct that we have jurisdiction over such claims, we conclude that an individual can forfeit the right to judicial review of a citizenship claim. In fact, the same Supreme Court precedents that support the idea that there is a constitutional right to judicial review of a citizenship claim also establish that this right (if it exists) does not extend to a citizenship claim that a person abandons.

Clement's right-to-review argument is based on the Supreme Court's 1922 decision in *Ng Fung Ho*. There, the Court explained that the Due Process Clause of the Fifth Amendment protects against the deprivation of liberty that would result from deporting a citizen "without the sanction afforded by judicial proceedings." 259 U.S. at 284-85. The Court reasoned that "[j]urisdiction in the executive to order deportation exists only if the person arrested is an alien." *Id.* at 284. Accordingly, Clement argues that we must review his claim that the derivative citizen laws are unconstitutional to the extent they render him a noncitizen.

There are limits, however, on the Court's reasoning in *Ng Fung Ho* and its import for Section 1252(b)(5)(A). Three are relevant here.

First, in a later decision, the Court discussed the limits of judicial review over deportation proceedings and held that *"[o]nly in the event an alleged alien asserts his United States citizenship in the hearing before the Department*, and supports his claim by substantial evidence, is he entitled to a trial *de novo* of that issue in the district court." *Kessler v. Strecker*, 307 U.S. 22, 34-35 (1939) (emphasis added); *see also United States v. Sing Tuck*, 194 U.S. 161, 167-68 (1904) (holding administrative exhaustion is a prerequisite to judicial review of a citizenship claim in exclusion proceedings). Accordingly, the right of a person subject to deportation to judicial review of a citizenship claim is limited by a requirement that the person pursue the claim in an administrative forum.

Second, the description of the citizenship question as "jurisdictional" in *Ng Fung Ho* does not necessarily mean citizenship claims must be treated differently as a matter of procedure than other kinds of claims. The Supreme Court has recently held that the question whether the Executive can properly take an action and the question whether it has the jurisdiction to do so are ultimately the same question. *See City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013). "A court's power to decide a case is independent of whether its decision is correct," so "a jurisdictionally proper but substantively incorrect judicial decision is not ultra vires." *Id.* at 297. But, unlike a court, the Executive's improper acts and acts outside its

"jurisdiction" suffer from the same problem; both are ultra vires because the Executive only has the authority to act within the bounds of the law. *Id.* Because "there is no principled basis" on which we may distinguish jurisdictional errors from other kinds of errors by the Executive, *id.* at 298, we do not believe the description of the citizenship question as "jurisdictional" in *Ng Fung Ho*, by itself, requires review of a citizenship claim if that review would not be afforded to any other kind of claim.

Third, like constitutional rights, a litigant ordinarily may forfeit statutory rights. Statutory rights are presumptively subject to waiver and forfeiture. *See United States v. Mezzanatto*, 513 U.S. 196, 200-01 (1995) ("Rather than deeming waiver [of a statutory right] presumptively unavailable absent some sort of express enabling clause, we instead have adhered to the opposite presumption."); *Stern v. Marshall*, 564 U.S. 462, 480-82 (2011) (holding that a litigant forfeited a statutory right, noting the litigant "does not explain why" the relevant "statutory limitation may not be . . . waived"). Although Section 1252(b)(5)(A) uses mandatory language directed at courts about how to adjudicate a citizenship claim, it is silent as to whether a person may waive or forfeit the right to judicial review of a citizenship claim. We therefore have no reason to think Congress precluded the forfeiture of citizenship claims through Section 1252(b)(5)(A). So, even if Section 1252(b)(5)(A) gives us freestanding jurisdiction to adjudicate citizenship claims (and we are not deciding that it does), we conclude that a litigant may forfeit the benefit of that provision.

The upshot is that, even if we have constitutionally grounded jurisdiction to review legal claims that go to a person's citizenship, a person can forfeit our review. We believe Clement did so here. Clement raised his citizenship claim before the immigration judge, appealed to the Board, then asked that his appeal be withdrawn so that he could be deported. In any other circumstance, this litigation conduct would be sufficient to forfeit a constitutional or statutory right to judicial review.

Ordinarily, a mere lack of diligence is sufficient to forfeit a constitutional or statutory right. For example, a criminal defendant in our legal system has "numerous opportunities to challenge the constitutionality of his conviction," but the "vehicles for review, however, are not available indefinitely and without limitation." *Daniels v. United States*, 532 U.S. 374, 381 (2001). And so, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Id.* Likewise, a criminal defendant forfeits the right to the assistance of counsel by failing to secure counsel in a reasonable time. *See United States v. Fowler*, 605 F.2d 181, 183 (5th Cir. 1979). So too in civil cases may a person forfeit a constitutional right merely by failing to comply with a statutory requirement. *See, e.g.*, *Tyler v. Hennepin Cnty.*, 598 U.S. ___, 143 S. Ct. 1369, 1378-79 (2023) (explaining that property owners in *Nelson v. City of New York*, 352 U.S. 103 (1956) forfeited their constitutional right to surplus from a tax sale by failing to comply with the state law procedure for requesting the surplus). To the Supreme Court, "[n]o procedural principle is more familiar

. . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944).

Unlike these careless forfeitures, a person may also forfeit a constitutional or statutory right when he voluntary acts in a manner that is inconsistent with the vindication of that right. For example, volunteering self-incriminating testimony in a civil case "will often forfeit the right to exclude the evidence in a subsequent criminal case," despite the constitutional privilege against self-incrimination. *Chavez v. Martinez*, 538 U.S. 760, 771 (2003) (internal quotation marks omitted). A criminal defendant's choice to "deliberately abandon[]" a constitutional claim in state court may forfeit judicial review of that claim in federal court. *See Smith v. Murray*, 477 U.S. 527, 534-35 (1986). And our sister circuits have recognized that a litigant who accepts a default judgment after initially arguing a lack personal jurisdiction forfeits a Fourteenth Amendment personal jurisdiction defense. *E.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 135 (2d Cir. 2011); *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 599-600 (7th Cir. 2007).

Clement's withdrawal of his appeal to the Board fits this latter, more obvious, category of forfeitures. The problem here is not that Clement did not raise his citizenship claim before the Board; the problem is that he voluntarily ended the proceedings and

explicitly asked to be deported.[1] Twice presented with an opportunity to avail himself of the administrative process and appeal the order of removal against him to the Board, Clement chose not to—once when he waived appeal of the original June 16, 2020, order and again when he filed his motion to withdraw his appeal of the April 30, 2021, order. And his request to be deported in his withdrawal motion proves that Clement fully understood the consequences of his decision to abandon the process. Clement is not guilty of mere carelessness in the form of a missed filing deadline or failure to exhaust an argument. Instead, his request to withdraw his appeal and be deported is fundamentally inconsistent with the exercise of a right to judicial review. Given Clement's specific request to be deported, he waived any right to have this Court determine his citizenship claim.

We recognize that the Ninth Circuit has said that a petitioner's waiver of appeal of an order of deportation did not forfeit judicial review of a citizenship claim. *See Rivera v. Ashcroft*, 394 F.3d 1129, 1136-37 (9th Cir. 2005). In *Rivera*, the court held that a

---

[1] We note that we are not deciding whether a petitioner with a citizenship claim must satisfy Section 1252(d)(1)'s exhaustion requirement to obtain judicial review. A failure to exhaust is of a different character than Clement's affirmative acceptance of the immigration judge's decision. *Cf. Poole v. Mukasey*, 522 F.3d 259, 264 (2d Cir. 2008) (holding an exhaustion requirement does not apply to citizenship claims because a person must voluntarily give up a citizenship claim); *Moussa v. INS*, 302 F.3d 823, 825 (8th Cir. 2002) (holding Section 1252(d)(1) does not apply to citizenship claims because the exhaustion requirement "do[es] not apply to 'any person' challenging a final order of removal, only to an 'alien'—precisely what [the petitioner] claims not to be").

person's willingness to accept deportation through the administrative process did not bar a future habeas petition that raised a citizenship claim. *Id.* We decline to adopt the reasoning in *Rivera* for three reasons.

First, *Rivera* was litigated in a very different procedural posture. Rivera did not petition for review from a deportation proceeding; instead, he filed a petition for a writ of habeas corpus after his deportation proceedings concluded. *Id.* at 1133. Because Rivera's citizenship claim came to the Ninth Circuit on appeal from the district court's denial of his petition for a writ of habeas corpus, Rivera's actions during the administrative removal proceedings were not directly related to his appeal. In contrast, Clement's petition for review follows directly from the very process that he voluntarily abandoned. Rather than seeking judicial review through another door like Rivera, Clement asks us to re-open a door that he closed on himself.

Second, whatever the merits of its forfeiture analysis, *Rivera* has been superseded by statute. At the time of *Rivera*, Congress had not yet enacted the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 306, which amended Section 1252 to eliminate habeas review of removal orders. *See INS v. St. Cyr*, 533 U.S. 289, 314 (2001); *Alexandre v. U.S. Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006). Now, a petitioner cannot file a writ of habeas corpus to challenge his deportation. So the Ninth Circuit approved a procedure in *Rivera* that has since been barred by statute.

Third, unlike the petitioner in *Rivera*, Clement did not passively accept deportation—he explicitly requested it. Rivera merely waived his appeal of the immigration judge's original order of removal. Rivera never filed a motion to reopen because the Attorney General deported him first. But Rivera did not withdraw his appeal or ask to be deported. 394 F.3d at 1133. Here, not only did Clement accept deportation by waiving appeal of the immigration judge's original order, Clement also asked the Board to "be deported" rather than continue his appeal of the immigration judge's denial of his motion to reopen.

We hold that Clement forfeited any right to judicial review of his claims by withdrawing his appeal to the Board of Immigration Appeals and asking to be deported.

## IV.

Although we have jurisdiction to determine whether the Board of Immigration Appeals erroneously withdrew Clement's appeal, he does not argue the Board did. He has also forfeited judicial review of his claims by withdrawing his appeal and asking to be deported. For these reasons, the petition for review is **DENIED**.

Clement also moved to transfer this case to the United States District Court for the District of New Jersey on the ground that there are "genuine issue[s] of material fact" about his claim that former 8 U.S.C. § 1432(a) unconstitutionally discriminates based on gender and race. *See* 8 U.S.C. § 1252(b)(5)(B). Because we conclude that Clement forfeited any right to judicial review of that claim, there is no genuine issue of material fact that requires us to

20                    Opinion of the Court                    21-13382

transfer this case to the district court. Accordingly, Clement's motion to transfer is **DENIED**.