**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-11613

Non-Argument Calendar

————————————

NATALIA MOROZOVA,

                                                                    *Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

                                                                    *Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A203-515-098

————————————

Before LUCK, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

Natalia Morozova petitions for review of the Board of Immigration Appeals' ("BIA") order affirming the immigration judge's ("IJ") denial of her claim for withholding of removal. She

argues that: (1) the IJ's adverse credibility finding is not supported by substantial evidence and the IJ erred in finding that she had not submitted adequate corroborating evidence; (2) the agency erred in finding that she failed to establish a well-founded fear of persecution at the hands of her ex-boyfriend if returned to Moldova; and (3) the agency failed to properly analyze her proposed particular social group.  After thorough review, we deny the petition.

## I.

We review only "the [BIA]'s decision -- not the immigration judge's decision -- unless the [BIA] expressly adopted the immigration judge's opinion." *Clement v. U.S. Att'y Gen.*, 75 F.4th 1193, 1199 (11th Cir. 2023) (citation modified).  Where the BIA expressly agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  This scope of review "reflects the well-established administrative law principle that the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Clement*, 75 F.4th at 1199 (citation modified).  "We do not consider issues that were not reached by the BIA." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016), *abrogated in part on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

Whether the BIA applied the correct legal standard is a question of law we review *de novo*. *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1321, 1325 (11th Cir. 2021), *overruled in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419–23 (2023); *see also*

*NLRB v. Sunnyland Packing Co.*, 557 F.2d 1157, 1160 (5th Cir. 1977) (noting that "an agency must either conform itself to its own prior decisions or else explain the reason for its departure").[1] We review the BIA's factual findings for substantial evidence. *Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1192 (11th Cir. 2021). Under the substantial evidence standard, we "must affirm the BIA's factual findings so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (citation modified). In other words, we "may reverse the BIA's factual findings only if the evidence compels that conclusion." *Id.* Under the substantial evidence standard, we "review the evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1194.

"We review constitutional challenges, including alleged due process violations, *de novo*." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). Further, we review *de novo* "whether a group proffered by an asylum applicant constitutes a particular social group" under the Immigration and Nationality Act ("INA"). *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). We also review *de novo* whether the BIA has afforded reasoned consideration to an applicant's claims. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019).

## II.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

For starters, we are unconvinced by Morozova's challenge to the IJ's adverse credibility finding. The record reflects that the BIA did not rely on the IJ's adverse credibility determination, or his finding that Morozova did not provide sufficient corroborating evidence, in dismissing Morozova's appeal. Instead, the BIA expressly affirmed the IJ's findings that "even considering [Morozova's] testimony to be credible and that she submitted sufficient corroborating evidence," Morozova failed to satisfy her burden of proof demonstrating she was entitled to relief. Accordingly, the IJ's credibility and corroboration findings were not grounds "upon which the record discloses that [the BIA's] action was based." *Clement*, 75 F.4th at 1199 (citation modified). As a result, they are not properly before us, and we deny the petition for review on this ground. *Id.*; *Gonzalez*, 820 F.3d at 403.

## III.

We are also unpersuaded by Morozova's claim that the IJ and the BIA applied an incorrect legal standard or otherwise erred in finding that she did not establish a well-founded fear of future persecution. To establish eligibility for asylum, a non-citizen is "required to prove that [s]he is a 'refugee.'" *Murugan*, 10 F.4th at 1192 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "A refugee is a person who is 'unable or unwilling' to return to h[er] home country 'because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (quoting 8 U.S.C. § 1101(a)(42)(A)). To establish a well-founded fear of future perse-

cution, a non-citizen "must show that [s]he has a 'subjectively genuine and objectively reasonable' fear of future persecution if returned to h[er] home country." *Id.* at 1193 (citation modified). "The objective prong can be satisfied with 'specific, detailed facts showing [that the non-citizen has] a good reason to fear that [s]he . . . will be *singled out* for persecution' on account of a statutorily protected ground." *Id.* (citation modified). The "well-founded fear" standard requires an applicant to show that there is a "reasonable possibility" she will suffer future persecution if returned to her home country. *Kazemzadeh*, 577 F.3d at 1352.

To be entitled to withholding of removal, similar to asylum, a non-citizen "must establish that her 'life or freedom would be threatened . . . because of [her] race, religion, nationality, membership in a particular social group, or political opinion.'" *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1238 (11th Cir. 2007) (quoting 8 U.S.C. § 1231(b)(3)(A)). But unlike asylum, a non-citizen seeking withholding of removal "bears the burden of demonstrating that it is more likely than not she will be persecuted or tortured upon being returned to her country." *Id.* (citation modified). This "more likely than not" standard is also referred to as a "'clear probability of persecution.'" *Ruiz v. Gonzales*, 479 F.3d 762, 764–65 (11th Cir. 2007). "Because the 'more likely than not' standard is more stringent than the 'well-founded fear' standard for asylum, an applicant unable to meet the 'well-founded fear' standard is generally precluded from qualifying for either asylum or withholding of removal." *Sanchez Jimenez*, 492 F.3d at 1239.

Here, substantial evidence supports the finding that Morozova did not establish a reasonable possibility of suffering future persecution by her ex-boyfriend.[2]  First, Morozova testified at her hearing that she'd had no contact with her ex-boyfriend for the last three-and-a-half years, and that during this time, her ex-boyfriend had been unable or unwilling to find her.  She added that he had no connection to Moldova -- only that she "believe[d] he ha[d] [] friends who live[d]" there, but she did not name any of those friends – and that he was from Belarus.  Morozova further testified that she did not know of any specific individual in Moldova who wanted to harm her and did not know the name of the criminal organization to which her ex-boyfriend allegedly belonged.

On this record, Morozova presented no evidence, apart from her own speculation, that her ex-boyfriend would or could

---

[2] We note that both the IJ and the BIA denied Morozova's withholding of removal claim because she failed to meet the lower standard for asylum, so we will analyze her claim in the same manner.  *See Sanchez Jimenez*, 492 F.3d at 1239.  We add that because Morozova has not raised to us any issues about persecution on account of her nationality, she has abandoned her nationality claim.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).  Finally, to the extent Morozova couches her instant claim as an issue of whether the IJ and the BIA "appl[ied] the correct legal standard" by requiring "certainty," neither the IJ or the BIA did so; instead, both cited and applied the well-founded fear standard for asylum.  As we see it, Morozova's argument amounts more to a disagreement with the agency's factual conclusion that she did not establish a well-founded fear of future persecution at the hands of her ex-boyfriend.  We review this factual determination for substantial evidence.  *Murugan*, 10 F.4th at 1192; *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007).

harm her in Moldova.  Viewed in the light most favorable to the agency's decision, substantial evidence supports the finding that Morozova failed to demonstrate a well-founded fear of future persecution in Moldova by her ex-boyfriend, and, therefore, she also failed to meet the higher standard required for withholding of removal. *Murugan*, 10 F.4th at 1192–93; *Sanchez Jimenez*, 492 F.3d at 1238–39.  We deny her petition on this basis as well.

## IV.

Finally, we find no merit to Morozova's claim that the agency failed to properly analyze her proposed particular social group.  "It is well-established that the Fifth Amendment entitles petitioners in removal proceedings to due process of the law." *Lapaix*, 605 F.3d at 1143.  Due process requires that non-citizens be given "notice and an opportunity to be heard in their removal proceedings." *Id.*  "To establish a due process violation, the petitioner must show that she was deprived of liberty without due process of law and that the purported errors caused her substantial prejudice." *Id.*; *Sama v. U.S. Att'y Gen.*, 887 F.3d 1225, 1234 (11th Cir. 2018).

Before the Supreme Court's decision in *Loper Bright*, 603 U.S. at 411–12, we applied *Chevron*[3] deference to the BIA's definition of a particular social group. *Perez-Zenteno*, 913 F.3d at 1308–09.  And the BIA has defined a "particular social group" as "'a group of persons all of whom share a common, immutable characteristic.'" *Id.*

---

[3] *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright*, 603 U.S. at 411–12.

(quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)). "The shared characteristic uniting the social group 'must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" *Id.* at 1309 (quoting *Matter of Acosta*, 19 I. & N. Dec. at 233). The BIA has elaborated that a particular social group must be "'defined with particularity'" and be "'socially distinct within the society in question.'" *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). Further, the proposed group must be "'discrete and have definable boundaries,'" and "'not be amorphous, overbroad, diffuse, or subjective.'" *Id.* (quoting *Matter of W-G-R-*, 26 I. & N. Dec. 208, 214 (BIA 2014)).

We have not provided an all-encompassing definition of a particular social group after *Loper Bright*, but in *Perez-Zenteno*, we said that the term "implies a subset of the population bound together by some discrete and palpable characteristics." *Id.* at 1310. The term must be "narrowly defined" in terms of "discrete and measurable factors [such] as immutability, identity, visibility, homogeneity, and cohesiveness in order to give meaning to the term." *Id.* at 1311.

In adjudicating a non-citizen's application for asylum or withholding of removal, the BIA must extend "reasoned consideration" to her claims. *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1372 (11th Cir. 2021) (citation modified). To determine if the BIA provided reasoned consideration, "we inquire only whether the Board considered the issues raised and announced its decision in terms

sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (citation modified). The BIA may fail to provide reasoned consideration when it "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.* (citation modified). Importantly, to write a reviewable decision, and thus provide reasoned consideration, the BIA "does not need to discuss all record evidence." *Ali*, 931 F.3d at 1334.

Here, the record contradicts Morozova's claim that the IJ and BIA failed to properly analyze the cognizability of her proposed particular social group – "a woman who has suffered physical and psychological abuse from her domestic partner." The IJ applied the BIA's precedent defining a particular social group and concluded that Morozova's proposed group "does not really describe any immutable characteristic that w[as] the reason why she was harmed or might be harmed in the future." The IJ also concluded that Morozova's proposed group was not "socially distinct within the society in Moldova or in Russia." He reasoned that Morozova's proposed group "merely describe[d] what allegedly happened to her, [or] what might happen to her." The BIA expressly agreed with that conclusion, stating that Morozova's proposed group was not cognizable because "it [was] not immutable or socially distinct." The BIA cited its precedent defining a particular social group -- *Matter of M-E-V-G-*, 26 I. & N. Dec. at 239 -- which is the same standard Morozova cites in her argument to us. So, assuming arguendo that

the agency's failure to apply its own legal standard could amount to a due process violation, Morozova has not shown that the agency failed to do so.

Morozova also argues that the agency's decision was insufficient because it failed to address the country conditions evidence concerning Moldova's legal system and ability to protect victims of domestic violence -- essentially arguing that the agency did not give reasoned consideration to her claims. However, the agency need not address every piece of evidence. *Ali*, 931 F.3d at 1334. Instead, the agency need only "consider[] the issues raised and announce[] its decision in terms sufficient to enable [us] to perceive that it has heard and thought and not merely reacted." *Jathursan*, 17 F.4th at 1372 (citation modified). As the record reflects, the BIA applied the very standards Morozova claims it should have applied and concluded that her proposed group was not cognizable because it was neither immutable nor socially distinct. Thus, because the BIA "considered the issues raised" and its analysis was "sufficient to enable [us] to perceive that it has heard and thought and not merely reacted," it provided reasoned consideration to this claim. *Jathursan*, 17 F.4th at 1372 (citation modified).

Finally, Morozova does not argue that the agency erred in its conclusion that her proposed particular social group was not cognizable. Accordingly, she has abandoned this argument on appeal. *Sepulveda*, 401 F.3d at 1228 n.2.

We deny Morozova's petition for review.

**PETITION DENIED.**